## CORNELL STEAMBOAT CO. v. 1,883 BAGS OF SUGAR.

### (District Court, E. D. New York. April 16, 1901.)

SALVAGE—COMPUTATION OF AWARD—VALUE OF PROPERTY SALVED.

> A cargo of sugar in port, on which the duty had been paid, subject to repayment in case of its destruction before landing, was exposed to danger of injury or destruction by fire, and the court made an award to the salvor equal to 10 per cent. of the value of the sugar. *Held*, that such award must be computed on the value of the sugar with the duty unpaid, since that was its actual value and the amount saved to the owner. The remaining sum, which went to make up the market value of the sugar with the tax paid, represented no property interest in the thing salved, but merely the tax, which could not properly be the subject of salvage; and its loss, moreover, would have been the loss of the government, which had no interest in or relation to the property, and could not be made a party, or affected by the salvage award.

In Admiralty. Suit to recover for salvage services

Benedict & Benedict (R. D. Benedict, of counsel), for libelant.

Wing, Putnam & Burlingham (C. C. Burlingham, of counsel), for bailee.

Foley & Wray (John F. Foley, of counsel), for carrier.

THOMAS, District Judge. This action is for compensation for salving a cargo of sugar awaiting discharge in the Erie Basin, meantime exposed to injury or destruction by fire. The duty had been paid, subject to correction of weights upon landing, and subject to repayment if the sugar were destroyed before landing. Rev. St. U. S. § 2984; Customs Regulations, art. 1236; 4 Treas. Dec., No. 10, p. 5, No. 22,847. Upon the trial the court stated that the salvor should be allowed a sum equal to 10 per centum of the value of the sugar; and the question reserved was whether such value was $12,245.50, the value with the duties unpaid, or $18,127.74, the value with the duties paid,—the difference being the amount of duty. It is urged by the libelant that the market value of the sugar was $18,127.74, as it was worth that sum in the market, and that $12,245.50 of this value belonged to the claimant, and the remaining $5,882.24 pertained to the tax levied by the government. The government can lay no tax, save upon an importation into the United States, and the importation is not consummated before discharge. The payment of the duty is an election to land the sugar, and yet the payment is subject to the condition of repayment, if the subject-matter of the tax, in whole or in part, cease to exist before discharge. What, then, was the real relation of the claimant and the United States to the cargo at the time the fire occurred? The claimant held undischarged sugar worth about $12,000. He could have duplicated it from incoming ships at that price. If it burned, that was the limit of his loss. He owned all the title,—all property interest in it. The United States had no title in it, no property rights, no lien. If the sugar burn, the United

States must return the tax paid in advance. It suffers thereby the diminution of its imports, without any specific loss of property, beyond this: that on a particular lot of sugar the payment of duty had anticipated actual entry into the country, and the amount was returnable by reason of the destruction. But under the fourteenth admiralty rule the United States could not be a party to this suit. It could not be a claimant. It had no relation to the res that enabled it to become either a respondent or a claimant, and is indifferent whether an award be granted or withheld. Had the sugar burned, the government would have lost thereby an opportunity to tax an import. As it was saved, it gained such opportunity. Its tax did not decrease or increase the value of the goods. Such tax was a mere burden of some $6,000 placed upon the owners. The libelant now urges that the court should add 10 per centum to this burden because the libelant saved the sugar. The position of the persons owning the sugar in such case would be that the libelant saved to them the sum of $12,245.50. It also preserved to them the right to enter the sugar in the United States, which was no pecuniary benefit to them. For this service the court is unwilling to decree payment by increasing the tax by 10 per centum thereof. The owners, whatever the nature of their interests, should give up something of the thing saved to the salvor, but should not pay some $600 because the United States was enabled to retain the duty paid. It is difficult to conceive of an interest in the res for which in theory there could be no legal claimant, or of a salvage service to somebody who could not be affected by the salvage award, that would increase a tax on property which would have ceased to exist if the salvage services had not been rendered. In an action against the carrying ship it has been adjudged that the difference between the market value of the cargo upon arrival, and its value had it arrived sound, was the measure of damages available to the consignee, and that the libelant should not be required to give credit for any rebate of the duty paid, which duty was one element making up the market value. The Eroe, 9 Ben. 191, Fed. Cas. No. 4,521, affirmed in 17 Blatchf. 16, Fed. Cas. No. 4,522, and followed in The Lizzie W. Virden, 19 Blatchf. 345, 8 Fed. 624. Judge Blatchford, in affirming this case, either distinguished or disapproved of The Carlotta, 9 Ben. 16, Fed. Cas. No. 2,413, where a different rule was suggested. By the citation of these cases the libelant is understood to suggest that if the sound cargo when landed would be worth $18,000, including $6,000 entry duty, and the cargo be destroyed before entry by the culpability of the ship, so that no duty be paid or payable, yet the consignee may recover, in a suit determinable by equitable consideration, the whole sum of $18,000. It may be that in the actions relating to usual contracts of affreightment a court may not sift out, for the benefit of the culpable carrier, some incidental benefit that is possible to the consignee, should he see fit to obtain a rebate of duties. This would entail an ascertainment, by an impracticable investigation, of the expense and probability of securing the rebate, which might and would place a serious burden on the consignee. The ship comes to port. The consignee pays his duties and takes his goods. If they are found to be damaged, he recovers for the

injury according to the rule laid down in The Eroe, and cannot be called upon to obtain a rebate for the benefit of the carrier, against whom there is an action based on tort. But no such case is here present. The owners of the cargo owed no duty to the salvor. They are guilty of no wrong. They have not stipulated to bring to the port a sound cargo. The salvor has paid and is liable to pay no duties. No burden of obtaining a rebate rests upon it. It did an act relating to goods for all practical purposes unentered and undutiable, and, for the service rendered the goods so situated, payment should be made. It is not easy to conceive of an action lying in favor of the consignee under the facts here presented. If there is a breach of duty of carriage, such action lies; but, if the goods be destroyed by fire without legal fault of the carrier, the action would not lie. But if the loss occurred from fire by the ship's fault, and the consignee had not paid the duty, he should not be permitted to recover according to a rule of damages that presupposes payment of such duty. If he has duly paid the duties, it may be that the court would not compel him to take upon himself a recovery of the duties, and credit the wrongdoer with the amount so recovered or recoverable. The consignee does not owe to the offending ship the duty of recovering the duties for the purpose of lessening the damages which the consignee has actually suffered by the ship's default. These views lead to the conclusion that the libelant should have a decree for the sum of $1,224.55, which is 10 per centum of the value of the goods to the owners at the moment when the salvage service was rendered.