## Case No. 12,199.

### The SABIONCELLO.

[8 Ben. 90.] [1]

District Court, S. D. New York. April, 1875.

CARRIERS — DAMAGES — EXCEPTIONS TO REPORT—
MARKET VALUE—EXPERTS.

1. Where goods were damaged on a ship by bad stowage, for which the ship was held liable: *Held,* that the amount of damage was properly arrived at by ascertaining the difference between the market value of the goods in their damaged state, and what would have been their market value if they had been sound.

[Cited in Morrison v. I. & V. Florio Steamship Co., 36 Fed. 572.]

---

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

2. The fact, that the owner of the goods, who was a paper manufacturer, sold the damaged goods, which were paper stock, at auction, and bought them in, and manufactured them into paper, and sold the paper at the same price at which he sold paper made from undamaged stock, did not change the rule.

[Cited in Morrison v. I. & V. Florio Steamship Co.. 36 Fed. 572.]

3. The mere fact of the sale of the goods at auction. without proof of the price they brought, was no ground for disregarding the evidence of experts as to their value.

This case came up on exceptions to the commissioner's report of damages. The libel was filed to recover damages alleged to have been sustained by some paper stock shipped on the Sabioncello and consigned to the libellants, by reason of bad stowage. The case is reported in [Case No. 12,198]. On the reference the libellants called experts, who testified as to the market value of the stock in its damaged state and what it would have been worth if sound. It appeared that the libellants sold the damaged stock at public auction (for what price did not appear), bought it in themselves and manufactured it into paper, and sold the paper for the same price as paper manufactured from sound stock.

The commissioner reported that he found due the libellants as follows:

"The injury and damage to 117 bales of paper stock by reason of the oil staining and soaking into the same (in some bales more than others) is the difference between the sound value and the damaged value of the said 117 bales:

Sound value was....................... $4,953 69
Damaged value was................. 2,352 32

Leaving the damage sustained.... $2.601 37

"Proctors for claimants claim that no damage was sustained by libellants, because they purchased the 117 bales as damaged paper stock at auction, and used the same in manufacturing paper at their factory, and the evidence does not show that the product manufactured was sold for less than the usual price for the product manufactured from sound paper stock. The commissioner does not adopt this rule of damages; but holds that the market value of the 117 bales as damaged, deducted from the sound value, is the proper measure of damages."

To this report the claimants filed exceptions as follows: 1. The commissioner erred in finding that the libellants had sustained any damages. 2. The commissioner erred in not finding specially in his report upon what basis he placed his estimate of damages. 3. If the commissioner in fact based his report upon the estimate of the experts sworn, he erred, as he should not have taken those estimates as the basis of his report. 4. The testimony disclosing the fact that the goods were sold at public auction and purchased by the libellants, the price paid by them would afford a better basis as to damage, and the commissioner should have required that to be shown. 5. The evidence in the case having disclosed that there were two causes of damage—viz., bad stowage and the perils of the sea,—the commissioner erred in not finding specially by his report, how much damage was sustained from the one cause and how much from the other. 6. The uncontradicted evidence showing that the merchandise was manufactured by the libellants without any loss, the commissioner erred in not reporting that the libellants had sustained no damage. 7. The commissioner erred in making by his report a general finding for a gross amount, without giving the rules upon which it was based, and should have made his report special, upon the evidence offered.

Man & Parsons, for libellants.

Beebe, Wilcox & Hobbs, for claimants.

BLATCHFORD, District Judge. Exception 1 is overruled. Exception 2 is overruled, because the commissioner does find specially in his report upon what basis he places his estimate of damages, and states therein that the basis is the difference between the sound value and the damaged value of the 117 bales. Exception 3 is overruled, on the ground that, if the claimants desired some other basis than the estimate of the experts sworn, to be taken, they should have introduced evidence to establish such basis. Exception 4 is overruled, on the ground that it was open to the claimants to show the price paid by the libellants at auction for the damaged bales, the claimants having brought out, on cross-examination of the witness Sturges, the fact that the libellants bought the damaged bales at the auction, and the fact that the libellants' books contained an account of the sale, and not having pursued the inquiry further. Exception 5 is overruled, on the ground that the reference was to compute the amount of the damages sustained by the libellants as set forth in the libel, and the damages set forth in the libel are damages to the paper stock by its being stained by oil and coal dust in consequence of its having been badly stowed by the ship. Exception 6 is overruled, on the ground that the evidence does not show what the exception states. Exception 7 is overruled, on the ground that the report is not a general finding for a gross amount, and does give the rules on which it is based.