## Morrison *v.* I. & V. Florio S. S. Co.

### (*District Court, D. New Jersey.* November 5, 1888.)

1. SHIPPING—CARRIAGE OF GOODS—DELAY IN DELIVERY—RISE IN MARKET.
   A cargo of prunes, which should have been delivered not later than April 28th, was, by the negligence of respondent, not delivered until June 11th, and then in a damaged condition. They were sold July 8th, on which day the market price for sound prunes was 6 cents per pound, but on account of their damaged condition a portion of the prunes brought only 5½ cents. The market price on April 28th, when they should have been delivered, was 5 cents. *Held,* that libelant was entitled to recover the difference between the market price on the day of delayed delivery and the price for which the damaged prunes sold. Respondent cannot be allowed to escape liability by reason of the advance in price in the interval between the dates of required and actual delivery.

2. SAME—SALE FOR ACCOUNT OF VESSEL—DELAY.
   Respondent has no cause to complain of the delay in making sale of the damaged prunes. It was the libelant's duty to prevent a sacrifice, and to obtain the best market price, and it does not appear that an unreasonable length of time was taken to do this.

3. SAME—REBATE IN CUSTOMS DUTIES.
   The amount of rebate of duties allowed to the libelant at the custom-house was the customary one allowed on all fruit cargoes, and had no reference to the damages caused by respondent's negligence; hence respondent was not entitled to the benefit of it.

In Admiralty. On exceptions to commissioner's report.

Libel filed by Richard J. Morrison, as administrator, against the I. & V. Florio Steam-Ship Company. There was a decree for libelant, and a reference to ascertain the damages; reported *sub nom. Mina* v. *Steam-Ship Co.*, 23 Fed. Rep. 915.

*Wing, Shoudy & Putnam,* for libelant.

*Ullo, Ruebsamen & Hubbe,* for respondents.

WALES, J. This case was referred to Linsly Rowe, Esq., commissioner, to ascertain and report the amount of damages, if any, suffered

by the libelant by reason of the delay of the respondents in trans-shipping, at Palermo, 600 casks of prunes, which had been shipped at Trieste, to be delivered in New York. The prunes should have been delivered in New York not later than the 28th of April, but did not arrive until the 11th of the following June; having been detained at Palermo for 55 days. The question whether there had been neglect and unreasonable delay on the part of the respondents in forwarding the cargo from Palermo was decided by Judge Nixon, who held that "if any injury resulted to the cargo from this long detention, the loss must be charged to the respondent corporation, which caused it." *Mina* v. *Steam-Ship Co.*, 23 Fed. Rep. 915. There was some conflict in the testimony submitted to the commissioner as to the condition of the fruit when it arrived in New York, and whether its damaged condition was the effect of inherent deterioration, or of exposure for an unreasonable time to the hot climate of Sicily. On both of these points the preponderating proof sustains the allegations of the libel. The fruit had been selected with unusual care, having been twice inspected before it was shipped at Trieste. While at Palermo, it was stored in an old hulk, or floating magazine, for nearly two months of the hottest period of the year in that region. The result of such exposure could not be other than injurious. On the extent of the injury directly traceable to that cause the testimony is contradictory, but it certainly does not require very much evidence to prove that perishable articles, like prunes, cannot stand long exposure to a tropical climate without risk of serious injury, if not of a total loss. As a matter of fact, about two-thirds of the prunes were found damaged, when examined in. New York, immediately after their delivery. The libelant notified the respondents' agents that in consequence of the wrongful detention he would hold the respondents liable for damages, and requested them to appoint some person to represent them at an inspection of the fruit, with the view to an amicable adjustment. This request was declined, or at least not complied with, and the libelant's experts inspected the casks in the absence of the respondents, and made written reports, which are among the exhibits in the case. One of these inspectors states that 409 casks were damaged from 12 to 30 per cent. in value, and the other says that he never saw prunes, arriving between January and June, as badly injured. The respondents' witnesses contradict these statements, but their examination of the fruit was superficial; their report was not reduced to writing; and, as they gave their testimony from recollection long afterwards, it cannot be deemed of equal weight with the libelant's proofs. The prunes were sold on the 8th of July, within less than one month after their delivery. One hundred and ninety-one casks of sound fruit brought six cents per pound, and 409 casks of damaged fruit sold for five and one-quarter cents per pound. On the day of the sale the market price of sound prunes was six cents; and the libelant claims as the measure of his loss the difference between that price and the one for which the damaged casks sold, which would be three-fourths of a cent. On the other hand, the respondents contend that the libelant is not entitled to recover anything, on the broad ground that the delay in deliv-

ering the prunes, instead of being a loss, resulted in an actual profit to the libelant; in other words, that the prunes sold for much more on the 8th of July than they would have sold for on the 28th of the preceding April, the day when they should have been delivered. Reduced to figures, the libelant made a total profit, on the whole lot of 600 casks, in consequence of the advance in the market price between April 28th and July 8th, of $4,818.08.

The commissioner, after a careful review of the evidence, and an elaborate discussion of the law relating to the rule of damages in such cases, has found for the libelant; estimating his loss on the sale of the unsound prunes at one-half cent on the pound, that being the difference between the market price of sound prunes on June 11th, the day of delayed delivery, (5¾ cents) and the price for which the damaged prunes sold on the 8th of July, (5¼ cents.) The items of damage are reported as follows:

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Damage to 409 casks prunes weighing net 556,712 lbs, at ½ c. | | | | | | | | $2,783 | 56 |
| Cooperage | - | - | - | - | - | - | - | 120 | 00 |
| | | | | | | | | $2,903 | 56 |
| Interest on above from June 18, 1881, | | - | - | - | - | 1,161 | 50 |
| Interest on invoice, $33,000, for 40 days, | | - | - | - | 220 | 00 |
| | | | | | | | | $4,285 | 06 |

In fixing this measure of damages, the commissioner says:

"The testimony shows that the prices for the season were as follows: March, 5⅝ cents; April and May, 5 cents; June, at the time of arrival, 5¾ cents; and July, 6 cents. This gives as the average price for the season 5¼ cents. * * * Upon a careful consideration of the whole matter, I am of opinion that, under the circumstances of this case, the damages must be measured by the price at the date of delivery, which is proved to be 5¾ cents."

The libelant claimed the difference between 5¼ cents and 6 cents, but the commissioner justly concluded that he had no right to store the goods and wait for a rising market; the libelant was obliged to use reasonable diligence in disposing of the goods, but not to delay the sale at the risk of further deterioration of a perishable article. The exception to the principal item of damage would have some validity if the delayed delivery had not been caused by the fault of the respondents; but, it having been decided that the long detention at Palermo was directly attributable to their neglect to provide means for prompt trans-shipment, they cannot now be allowed to take advantage of their own wrong, and claim a participation of profits growing out of a rise in the market price. The profit accruing from the accidental rise in the market belonged to the libelant, and it would be an extraordinary misapplication of the principles of justice to allow the respondents to escape all liability for their negligence and dereliction of duty by depriving the libelant of any recompense for their wrong because of the advance in price. To do this would be to bestow a premium on the misconduct of the respondents. The illustration presented on the argument by libelant's proctor exhibits the danger of adopting the rule contended for by respondents. Here were

600 casks of prunes, consigned to the libelant. Suppose that the price had doubled between April 28th, the day when they should have been delivered, and June 11th, the day of actual delivery; suppose also that 300 casks were delivered sound, and the other 300 were totally destroyed by the fault of the carrier,—can the ship-owner claim that the doubling of the market price had relieved him from payment for the half destroyed? It is admitted that, had the delay occurred without fault on the part of the carrier, the libelant would not be entitled to recover; it having been well settled by competent authority that, in long and uncertain voyages by sea, the damages by the fall of the market are too remote to be recoverable against the carrier. *The Parana*, 2 Prob. Div. 118; *The Notting Hill*, 9 Prob. Div. 105. In the latter case, it was said by Sir JAMES HANNEN that the loss of market is an accidental loss, and the allowance of such a claim would also be contrary to the long-established practice of the admiralty court. But here there was no proof that the long delay was caused by any stress of weather, but it is proved to have arisen from the respondents' neglect to provide for the more direct transportation of the merchandise to New York after its arrival at Palermo. In the case of *The Sabioncello*, 8 Ben. 90, rags damaged by contact with petroleum were sold at auction, and bought by the consignee, and by him manufactured into paper, which brought the same price as paper manufactured from sound goods. It was held that the price as determined by the sale fixed the damages; and that the subsequent manufacture into paper could not reduce the damages resulting from the saturation. Even where the measure of damages has been fixed by the parties, the carrier cannot be exempted from the consequences of his own wrong by the sale of the goods at an advanced price. In *Pearse* v. *Steam-Ship Co.*, 24 Fed. Rep. 285, the bill of lading was for 14 bales, 3 of which were damaged. It contained the clause that "in case of damage, loss, or non-delivery, the ship-owners will not be liable for more than the invoice value of the goods." The invoice value of the goods was $2,692.16; the price obtained for the whole in the foreign market was $2,901.85. The invoice value of the damaged goods alone was $571.05; the actual price received for them was $184.85. The respondents there contended that the stipulation of the bill of lading should be construed as limiting their responsibility to the invoice value of the shipment as a whole; and that the carriers were not to be liable for any loss or damage, provided the shipper ultimately realized at the port of destination the whole invoice value. But the court held that, if the construction contended for by the claimants were the proper meaning of the limiting clause, it would be void upon grounds of public policy, as unreasonable, and as affording a direct encouragement to the theft or non-delivery of the shipper's goods; for on every shipment, whether there was a loss or not, the carrier might without accountability appropriate to his own use enough of the owner's goods to reduce the aggregate value of what remained in the foreign market to the invoice value of the whole; a result destructive of all commerce, because enabling the carrier to appropriate all its profits. The decree in that case was that the libelant was awarded the difference between the

invoice value of the goods damaged and freight, and the net proceeds of the sale of them. See, also, Sedg. Dam. (Ed. 1880) 56, note "Damages not reduced by benefit [to plaintiff] accruing through defendant's wrong." Nor have the respondents any just cause to complain of the postponement of the sale of the damaged prunes. The interval of time that elapsed between the day of delivery and the day of sale was not long. It was the duty of the libelant to prevent a sacrifice of his property, and to obtain the best market price; and this course was equally advantageous to the respondents; for if the damaged prunes had been sold immediately on their arrival, it is quite probable that they would have sold for less than they did. There is no evidence that they might have brought more. Moreover, it is questionable whether the libelant would have been justified in making an immediate sale, and without any endeavor to secure the highest attainable price. In *The Marinin S.*, 28 Fed. Rep. 668, it was said to be unreasonable to throw a large quantity of goods on the market for sale at auction as damaged goods, upon a slight examination, at the assumed risk and loss of the vessel; and that a court of admiralty would not support any such precipitate action. It was held that the master was entitled to the same protection against unreasonable and indiscriminate sales by the consignee, in the port of discharge on the vessel's account and risk, that is imposed on the master in favor of the owner on a sale by the master in a foreign port.

The respondents further claim that the amount of rebate of duties allowed to the libelant at the custom-house should be deducted from the damages ascertained by the commissioner. This question has been already adjudicated. *The Eroe*, 9 Ben. 191, 17 Blatch. 16; *The Lizzie W. Virden*, 8 Fed. Rep. 624. The rebate was the customary one allowed on all fruit cargoes, the benefit of which belonged to the owner, and had no reference to the damages caused by the respondents' neglect; and differing in this respect from *The Mangalore*, 23 Fed. Rep. 463, cited by the respondents' proctor. The exceptions are overruled, and the report confirmed, and it is ordered that a decree be entered for the libelant for the amount found to be due by the commissioner, with interest on the sum of $2,903.56 from the 15th day of February, 1888, (the date of filing the report,) to the day of entering the decree, with costs.