In re Sa'ad El–AMIN, Debtor.

Wal–Mart Stores, Inc., Plaintiff,

v.

Sa'ad El–Amin, Valerie L. Vaughan, Internal Revenue Service, El–Amin & Crawford, P.C., El–Amin & Associates, Carolyn Adams, Defendants.

Bankruptcy No. 96–33556.
Adversary No. 96–3146–T.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Aug. 3, 2000.

Sa'ad El–Amin, Richmond, Virginia, debtor pro se.

Philip C. Baxa, James M. Nolan, Mays & Valentine L.L.P., Richmond, Virginia, for Wal–Mart Stores, Inc.

David R. Simonsen, Jr., Richmond, Virginia, for Valerie Vaughan.

James B. Thorsen, W. Reilly Marchant, Thorsen, Marchant & Scher, Richmond, Virginia, Deborah C. Stanley, Special Assistant United States Attorney, Richmond, Virginia, for Internal Revenue Service.

David D. Hopper, Mezzullo & McCandlish, Richmond, Virginia, for Carolyn Adams.

Sherman B. Lubman, Richmond, Virginia, Chapter 7 Trustee.

Gregg Nivala, Office of the U.S. Trustee, Richmond, Virginia, Assistant United States Trustee.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

Currently before the court is Valerie Vaughan's ("Vaughan") March 9th, 2000 Motion to Alter or Amend Findings and/or for Reconsideration of this court's Order and Memorandum Opinion (the "Motion to Reconsider" or "Motion"). This Motion to Reconsider is brought pursuant to rules 52(b) and 59(a) and (e) of the Federal Rules of Civil Procedure, made applicable in bankruptcy proceedings by rules 7052(b) and 9023 of the Federal Rules of Bankruptcy Procedure. These rules permit a court, upon motion of a party, to amend its findings of fact and to amend its judgment in appropriate circumstances. Rule 59(e) also permits a court to grant a new trial. In her Motion, Vaughan requests that this court amend its findings and reconsider or vacate the order in its Memorandum Opinion of February 28, 2000 (the "Opinion"). Two parties, the trustee of the bankruptcy estate in this case and Carolyn Adams, a creditor in this case ("Adams") have filed memoranda in opposition to Vaughan's Motion. For the reasons stated below, the court grants the Motion. The finding that Vaughan should pay the sum of $5,000 to the bankruptcy estate of Sa'ad El–Amin will be amended, and the amount will be changed to $10,978.50. The court will also amend its order to reflect this change.

### DISCUSSION

■ The purpose of rules 52(b) and 59(a) and (e) is to permit the trial court to correct glaring errors of law or fact that are discovered upon reconsideration of an opinion, or to otherwise amend findings or a judgment in light of newly discovered evidence or an intervening change in the law. *See National Metal Finishing Co. v. BarclaysAmerican/Commerical, Inc.*, 899 F.2d 119, 123 (1st Cir.1990). Courts have considerable discretion in deciding whether to grant motions pursuant to rule 52 or rule 59. *See Central Fidelity Bank v. Cooper (In re Cooper)*, 116 B.R. 469, 471 (Bankr.E.D.Va.1990). However, these rules do not permit a losing party to simply repeat old arguments already considered and rejected or to raise new legal theories that should have been raised earlier. *See National Metal Finishing*, 899 F.2d at 123.

In the Opinion, this court made numerous findings of fact. A brief summary is as follows: Valerie Vaughan was at different times represented by several different attorneys in two lawsuits, one against Wal–Mart Stores, Inc., and another against Jeff Faries. One of these attorneys was Sa'ad El–Amin, the debtor in this bankruptcy case ("El–Amin"). Adams, a creditor of El–Amin's, claimed an interest in whatever fees El–Amin had earned in connection with Vaughan's two lawsuits. Adams had brought garnishment actions against Wal–Mart and against Vaughan. The lawsuit against Wal–Mart ended in a settlement and the district court in which the case had been pending awarded El–Amin $36,706.50 in legal fees. After El–Amin filed his bankruptcy petition. Wal–Mart filed the complaint that commenced this adversary proceeding. In this complaint, Wal–Mart sought to pay the $36,706.50 into the registry of the court and have the court determine the proper disposition of the funds.

On September 26, 1996, Vaughan filed an answer to Wal–Mart's complaint and a counterclaim for declaratory judgment. By this time, she had dismissed El–Amin from representing her in any capacity and was represented by attorney James B. Thorsen ("Thorsen"). Thorsen had been successful in obtaining a $1.5 million award in Vaughan's lawsuit against Jeff Faries. There was a dispute as to whether El–Amin was entitled to any of this money for some of the work he had done on the Faries case prior to his dismissal. To resolve this dispute, Thorsen proposed in the answer and counterclaim that Vaughan pay $10,978.50 into the registry of the court in full satisfaction of any obligation she might have to El–Amin arising out of the Faries suit. Thorsen also set aside this amount in a CD. Upon payment of this amount, Vaughan was to be absolved of any liability for the funds to any other party in the adversary proceeding. On October 17, Adams filed an answer to Vaughan's counterclaim in which she asserted that any fees earned in connection with El–Amin's representation of Vaughan belong to El–Amin and Crawford, P.C. Adams further claimed that her garnishment of Wal–Mart and Vaughan gave her a first priority lien on those fees and that no other party has an interest superior to hers. She asked that Vaughan be ordered to pay the funds she claimed to hold over to the court.

Also on October 17, 1996, Vaughan personally sent a letter to the clerk of the bankruptcy court, accompanied by several documents that she wanted the court to review. The documents were timesheets and bills El–Amin had sent to Vaughan that purported to reflect the work he had done in the Faries case. She did not notify any of the other parties to this adversary proceeding that she was doing this, and Adams claims to have been unaware of the existence of this letter until

this court issued its Opinion. Despite the lack of proper notice, the letter and the documents were docketed in the adversary file as an ordinary pleading. In the letter, Vaughan seems to deny that she owes El–Amin $10,978.50, although she acknowledges that he "is entitled to the proper amount for services rendered, not attorney fees desired." She believes that this amount would be "around $5,000."

In November 1996, Vaughan again changed attorneys, this time replacing Thorsen with her current counsel, David Simonsen ("Simonsen"). Thorsen continued to hold the $10,978.50 in a CD for Vaughan. Simonsen informed the other parties that the draft order Thorsen had circulated, which would have effectuated the payment of $10,978.50 into the registry of the court, was not going to be entered and should be disregarded. Counsel for Adams had requested that some changes be made to the first draft order, and Simonsen told the other parties that he would prepare and circulate a new draft order. However, no such order was ever circulated and the $10,978.50 was never paid into the court. Instead, in June 1998, Jim Thorsen liquidated the CD in which he had put the money and released it to Vaughan. No action was taken on Vaughan's counterclaim for declaratory judgment for approximately three years[1], during which time the El–Amin bankruptcy was converted to chapter 7. Also during this period the clerk incorrectly closed this adversary proceeding while Vaughan's interpleader action was still outstanding and unresolved.

Finally, on September 29, 1999, the chapter 7 trustee filed a motion to approve compromise. The compromise requested that the funds referenced in Vaughan's answer and counterclaim from September 1996, along with the funds Wal–Mart had already paid into the court, be paid over to

---

1. After Vaughan filed her counterclaim in September 1996, a pretrial conference was held on October 21. Following this conference, on November 13, Jim Thorsen circulated the proposed consent order that called for Vaughan to deposit $10,978.50 with the registry of the court.

the trustee for administration as assets of the chapter 7 estate. Vaughan objected to the approval of this compromise, arguing that she did not owe any money to El-Amin. She also filed her motion to withdraw her counterclaim for declaratory judgment, which was the subject of this hearing. Adams filed two pleadings in which she generally opposed the relief Vaughan sought. She asserted that she had been led to believe that Vaughan's counsel was safeguarding the $10,978.50, and that now that money was gone. Adams also claimed that she had released her garnishment actions once the parties had reached a tentative agreement about the disposition of the funds. If Vaughan were permitted to withdraw her counterclaim, Adams would be forced to re-commence her garnishment actions and litigate the issue of Vaughan's liability to a now defunct corporation, long after the fact. For these reasons, Adams asked that Vaughan's motion to withdraw be denied and that she be ordered to pay the funds into the court. The trustee filed a memorandum in support of Adams' position.

These facts were essentially undisputed, although Vaughan of course disputes that she should have to pay anything to El-Amin's bankruptcy estate. In its Opinion, the court drew the following inferences from these facts:

There is ample evidence to suggest that Vaughan's present counsel, Simonsen, did not perform as expected and exhibited a willingness to allow this matter to wither on the vine by creating delay and confusion rather than attempting to resolve the matter. It appears that Simonsen never circulated a revised order as promised, did not take responsibility for safeguarding the funds when he became counsel, never notified the trustee or parties when the CD was liquidated, generally failed to keep the other parties informed, never inquired at the clerk's office why the adversary proceeding was listed as closed when Vaughan still had this interpleader outstanding, and never took action to withdraw the interpleader motion for three years (from November 1996 through October 1999) until the chapter 7 trustee filed a motion to effect a compromise in reliance upon that document.

The court notes that Simonsen has carefully chosen his words; if they were not designed to mislead the court and the other parties, they certainly invited false inferences. For example, according to memoranda filed by Simonsen, he asked all parties to set aside the draft order effectuating the interpleader as Vaughan no longer wanted it entered in the form that it was in and did not wish to deposit any funds into the court. Counsel for Adams contends that this distorts the truth: what really occurred is that Simonsen promised that changes would be made to the draft order so that interest earned would attach to the funds and a new order circulated (but this was never done), and Simonsen expressed a preference to keep the funds in a CD until the interpleader was resolved rather than pay it into court. However, he then allowed the CD to be liquidated.

■ Much of Vaughan's Motion takes issue with the language from the Opinion quoted above. She argues that many of the conclusions the court reached were inappropriate or unfounded. The court regards these arguments as ones that should have been raised at the original hearing on this matter. Vaughan's criticisms of the court's language go more to its interpretation of largely undisputed facts rather than its actual findings. As the finder of fact, the court must also draw reasonable inferences from those facts. Many of Vaughan's arguments in her Motion to Reconsider essentially amount to an attempt to reargue the inferences the court should draw from the facts. At the initial hearing and in briefs submitted, Vaughan's counsel certainly could have suggested the correct inferences for the court to draw. However, once the hearing was adjourned and the matter taken under advisement, it became the province of the court to interpret the facts as it found them. Certainly

many of the facts in the record admit of more than one reasonable interpretation. But this reality cannot be the basis for a rule 52(b) or 59(e) motion; the purpose of these rules is the correction of an egregious error of law or fact, not to allow a losing party to resubmit unsuccessful arguments.

To give one example, Vaughan takes exception to the statement in the Memorandum Opinion that her counsel "exhibited a willingness to allow this matter to wither on the vine by creating delay and confusion rather than attempting to resolve this matter." The court made this observation based on the following facts: once Mr. Simonsen became Vaughan's counsel in November 1996, he told the other parties to this proceeding to disregard a previously circulated draft order because he was going to circulate a new one. He never did this, but instead waited while the El–Amin bankruptcy case progressed. While he was waiting, El–Amin, in September 1997, filed a lawsuit in state court against Vaughan seeking to establish a claim to some of the money she was awarded in the Faries lawsuit. In June 1998, El–Amin nonsuited this action[2], which time Vaughan's former attorney, Mr. Thorsen, liquidated the CD that held the $10,978.50 Vaughan had previously sought to pay over to the court. After the funds in the CD were distributed to Vaughan, the clerk of the bankruptcy court in November 1998 mistakenly closed this adversary proceeding while Vaughan's interpleader action was still pending.

■ During this two-year period, Mr. Simonsen did indeed do some things. He essentially withdrew the proposed order that his predecessor had circulated and which would have effected Vaughan's payment of the $10,978.50. He followed the El–Amin bankruptcy through conversations with other counsel and through the clerk's office electronic case management system. He also made some "informal inquiries" when he saw that the adversary proceeding in which his client still had an unresolved pleading had been closed. However, he inexplicably did not take the one step that would have unequivocally told the parties involved that Vaughan no longer believed she was in possession of funds to which there were competing claims: he did not move to withdraw the pleading. Rather, as nearly as this court can tell, he waited to see whether the matter would simply go away on its own. From this the court does not mean to suggest that his actions were improper. Simonsen undoubtedly believed that his approach was in his client's best interests. While the court's language in describing Simonsen's actions may have been strong, his client's dissatisfaction with that language does not provide a basis for challenging the court's findings of fact or the conclusions drawn from those findings. Vaughan's objections to various other statements in this court's opinion likewise amount to either arguing over the proper inference to be drawn from essentially undisputed facts, or quibbling over the court's choice of words. Vaughan fails to point to any clear factual errors that have unfairly prejudiced her.

Vaughan further argues that this Court incorrectly concluded that to allow her to withdraw her pleading at this stage, three years after she originally filed it, would be prejudicial to the other parties to the proceeding. She contends that there would be no prejudice because the trustee of El–Amin's bankruptcy estate would now simply be required to litigate the issue of Vaughan's liability to the estate. This puts the trustee in no worse a position than he would be had Vaughan never filed the counterclaim in the first place. Vaughan goes on to point out that no parties whose testimony would be needed to resolve the issue have died or become unavailable, no necessary records have been lost, and there is no reason to believe that Mr. El–Amin would be less willing to help the trustee determine Vaughan's lia-

---

**2.** Because his bankruptcy had been converted to Chapter 7, the decision to dismiss this action should have been made by the case trustee. *See* 11 U.S.C. §§ 541, 704.

bility today than he would have been in the fall of 1996.

■■■ Rules 41(a)(2) and (c) limit the right of a party to dismiss an action after an adverse party has filed a responsive pleading. Before dismissal is permitted, the court must first determine that an adverse party will not be unfairly prejudiced by the dismissal. *See Davis v. USX Corp.,* 819 F.2d 1270, 1273 (4th Cir.1987). In considering a motion to dismiss, the court should use the following factors to arrive at a decision:

(1) the opposing party's effort and expense in preparing for trial;

(2) excessive delay or lack of diligence on the part of the movant;

(3) insufficient explanation of the need for a dismissal; and

(4) the present stage of litigation, i.e., whether a motion for summary judgment is pending.

*See Teck Gen. Partnership v. Crown Cent. Petroleum,* 28 F.Supp.2d 989, 991 (E.D.Va. 1998) (*quoting Gross v. Spies,* 133 F.3d 914 (4th Cir.1998) (unpublished table decision)). It is the second factor that was most relevant to this court's decision.

■■■ This court found that Vaughan's delay and lack of diligence in prosecuting her interpleader action compelled denial of her motion to withdraw her counterclaim. A number of circumstances have changed since Vaughan first filed the pleading in September 1996. When the parties initially reached a tentative agreement as to the disposition of the funds at issue, Adams withdrew her garnishment action against Vaughan. Her counsel also agreed to allow Vaughan's former counsel, Thorsen, to keep the $10,978.50 in a CD, rather than insisting that the court hold it. The CD that held the funds at issue has been liquidated. Thus, while at one time collection of these funds was assured, the prospect of collection is now far more uncertain.

In late 1996, Sa'ad El–Amin was a chapter 11 debtor-in-possession. The case was converted to one under chapter 7 on October 16, 1997, and by the terms of 11 U.S.C. § 704, if any cause of action the former debtor-in-possession had against Vaughan was to be pursued, it was up to the chapter 7 trustee to do so. The first trustee appointed resigned after less than three weeks and the current trustee. Sherman Lubman, needed time to become acquainted with the case and decide how he wanted to proceed. It is therefore somewhat understandable if Adams and the current trustee did not pursue Vaughan's interpleader proceeding until three years after she originally filed it. Adams had dismissed her garnishment action and was waiting for a bankruptcy case to run its course so that she could receive a distribution, and the trustee was not even involved in this case until late November 1997.

Finally, the Court is sympathetic to the difficulties the trustee or Adams would face if they now had to litigate Vaughan's liability to Sa'ad El–Amin or the now defunct El–Amin & Crawford, P.C. When Vaughan filed her October 1996 letter to the clerk of the court, she also filed some invoices that the firm had sent to her. They date back to mid–1995 and do not present a clear picture of how much legal work El–Amin & Crawford did for Vaughan in connection with the Faries case. As Adams points out, El–Amin has received his bankruptcy discharge and may be unwilling to cooperate in any effort to interpret his old billing records.[3] Even if he is cooperative, memories fade over time and he may simply be unable to recall how much work he performed for Vaughan over four years ago. In light of these realities, the court reasserts its finding that it would be unfairly prejudicial to allow Vaughan to withdraw her pleading at this stage.

Vaughan also moves that the court reconsider and amend its finding that the amount she must pay to the bankruptcy estate of Sa'ad El–Amin is $5,000. The

---

**3.** Although, if he is uncooperative, the trustee or Adams may still bring an action to revoke his discharge as this case is not yet closed. *See* 11 U.S.C. § 727(e)(2)(b), (d)(3), (a)(6)(C).

court based this finding on the October 1996 letter that Vaughan submitted to the clerk of the bankruptcy court. In this letter, Vaughan disputes the amounts shown in the bills for legal services El–Amin & Crawford submitted to her. She indicates that Sa'ad El–Amin is only entitled to compensation for the legal services he actually performed in connection with the Faries case, and she estimates this amount to be $5,000. In its previous Opinion, this court simply used this number as the amount of Vaughan's liability to the estate, instead of the $10,978.50 she claimed she would pay in her 1996 answer and counterclaim.

Vaughan now argues that using the letter she wrote in October 1996 was unfairly prejudicial to her. She erroneously claims that the court "specifically noted that the parties would not offer evidence as to the amount of any fee owed by Vaughan to Mr. El–Amin or his estate in bankruptcy." The implication of her claim is that the parties were taken by surprise by the court's reliance on this letter, and she was not given an opportunity to explain her statements. In addition, Vaughan argues that if this letter is to be considered evidence of record, then Adams and the trustee must be regarded as having had notice of Vaughan's change of position as early as October 1996. This, according to Vaughan, nullifies their argument that they were unfairly prejudiced because she waited three years to inform the other parties that she no longer wanted to pay the $10,978.50.

■ The court finds that it would be appropriate to amend its finding that Vaughan's liability to the bankruptcy estate is $5,000, and it instead finds that Vaughan should pay $10,978.50. It does so for two reasons. First, this is a matter beyond the scope of the hearing on Vaughan's motion to withdraw her counterclaim. While the court did not limit the parties to only putting on evidence relating to whether Vaughan's pleading could be withdrawn, none of the parties directly addressed the issue of the amount of her

liability to the estate. Vaughan of course testified that she believed she owed Sa'ad El–Amin nothing, but neither Adams, Vaughan, nor the trustee knew that the court would be reconsidering the proper amount of Vaughan's payment to the court. Thus, having already held that Vaughan should not be permitted to withdraw her counterclaim, it seems more sensible to require her to make the payment she originally agreed to make in that counterclaim. It is a factual averment and Adams, the only party to respond to her pleading, indicated that she, too, wanted Vaughan to pay $10,978.50 to the bankruptcy estate. The court must assume that Vaughan and her former counsel reasonably believed the facts in her pleading to be true. See Fed. R.Civ.P. 11(b)(3).

Second, the court surmises from Vaughan's Motion to Reconsider and the response in opposition to it that both Vaughan *and* Adams object to the court's reliance on the October 1996 letter. Vaughan's objection is certainly of less concern than Adams'; after all, Vaughan's complaint is that her own statement was used against her. It is indisputable that a party's admission is admissible as substantive evidence against that party. See Fed. R.Evid. 801(d)(2). The party who made the admission cannot complain that they were prejudiced by their own words. However, Adams and the trustee should have been given an opportunity to see this letter and decide whether they wanted to offer it as evidence or not. As Adams has objected to its use, it is entirely possible that had she known about it previously, she would not have attempted to use it at the hearing on Vaughan's motion to withdraw her counterclaim. Vaughan's 1996 letter was not properly brought before the court, either as a pleading or as evidence. The decision to rely on that letter was in error, and the Motion for Reconsideration is therefore granted.

In summary, the court does not alter or amend its decision not to allow Vaughan to withdraw her original answer and counterclaim. That pleading, filed in 1996, stated that she believed she was in possession of

funds to which there were competing claims, and that she wanted to deposit $10,978.50 into the registry of the court so that these claims could be resolved. Her former attorney, Thorsen, placed this amount in a CD. Adams, El–Amin's creditor, relied on the actions of Vaughan and her present and former counsel to her detriment. She released a garnishment against Vaughan and waited for a distribution from El–Amin's bankruptcy estate. She was not made aware, until long after the fact, of either Vaughan's 1996 letter to the court or the liquidation of the funds in the CD. These facts lead the court to restate its previous finding that it would be unfairly prejudicial to Adams and the trustee to allow Vaughan to withdraw her pleading. Having found that the pleading may not be withdrawn, the amount originally stated in that pleading should not be changed. The court will therefore amend its Opinion to change the amount that Vaughan must pay to the bankruptcy estate of Sa'ad El–Amin from $5,000 to $10,-978.50.