In re PROPERTY TECHNOLOGIES, LTD. Chapter 11 Debtor–in–Possession.

Property Technologies, Ltd., Plaintiff,

v.

TelNet Corporation, William C. Muller, and Alejandro Perez, Defendants.

Bankruptcy No. 00–61155–DOT.
Adversary No. 01–6016.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Jan. 25, 2002.

---

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Chief Judge.

By order entered November 1, 2001, the court granted the motion for partial summary judgment by defendant TelNet Corporation. On November 13 the debtor and plaintiff, Property Technologies, Ltd., (PTL) filed a motion to alter or amend the court's order. Hearing on this motion was held December 11, 2001.

PTL's motion to alter or amend will be denied.

*Facts.*

The court's findings of fact in the order of November 1, 2001, are incorporated in this opinion.

The facts may be summarized as follows.

PTL filed this chapter 11 case on October 18, 2000, and continues to operate as debtor-in-possession. Prior to filing, PTL operated a business of selling, installing and servicing commercial telephone equipment and billing systems. As this opinion is being prepared PTL is seeking to sell substantially all of its assets, and a hearing is presently scheduled for January 29, 2002, for approval of the anticipated sale.

By agreement dated January 12, 2000, PTL purchased the corporate stock of Pavarini Business Communications, Inc., a Florida corporation engaged in a business similar to plaintiff's.

The sellers of the Pavarini stock were defendants Muller and Perez and another individual, and PTL paid a purchase price of $500,000.00 at settlement. Additionally, PTL agreed to pay Muller and Perez $356,250.00 each for their interests in Pavarini's goodwill. Payment of the goodwill was to be made over a period of five years and was evidenced by PTL's delivery at settlement of virtually identical promissory notes to each payee. The notes provided for six principal installment payments of $59,375.00 plus interest at 9%. The first payments were due January 2, 2001, the second payments were due April 1, 2001, and the remaining payments were due January 2 of the succeeding four years.

The stock transaction consisted of several documents, including five year employment, non-compete and confidentiality agreements between PTL and Muller and Perez. At settlement, PTL paid Muller and Perez $14,493.00 each for their covenants not to compete.

Each of the promissory notes provided that PTL would be in default of the non-compete covenant payments,

if it fails to pay any installment of principal or interest when due or thirty (30) days thereafter.

The default provisions of the notes also contained the following language relative to the payees' non-compete agreements:

In addition a default in the payment due hereunder for a period of thirty (30) days shall cause the Non–Compete Agreement executed simultaneously herewith to become null and void and of no effect.

Similar language is contained in section 2.5 of the transaction agreement, which also provided that if Muller or Perez left PTL's employ then PTL would have no further obligation to pay the amounts remaining due to them.

Subsequent to PTL's purchase of the Pavarini stock, Muller and Perez remained as employees of PTL pursuant to their employment agreements.

PTL failed to make the payments on the Muller and Perez promissory notes that came due on January 2 and April 1, 2001.

In February 2001, PTL reduced Muller's and Perez's compensation for reasons that were authorized by the employment agreements. On February 15, 2001, Muller and Perez resigned their employment with PTL.

On February 16, 2001, Muller and Perez became employees of defendant TelNet. TelNet is a competitor of PTL.

*Procedural History and Prior Ruling.*

PTL commenced this adversary proceeding by a complaint filed March 29, 2001. An amended complaint was filed on May 31, 2001. PTL seeks injunctive relief along with compensatory and punitive damages against the defendants TelNet,

Muller and Perez. The numerous allegations arise out of the Pavarini stock transaction and the circumstances of Muller and Perez leaving the employ of PTL and becoming employees of PTL's competitor TelNet. The 16 counts of the complaint range from breach of contract to misappropriation of trade secrets to breach of fiduciary duties and tortious interference, along with various counts of conspiracy to commit the alleged offenses.

The present motion derives from the PTL complaint allegations that Muller and Perez breached their covenants not to compete that were part of the stock purchase. This court's order of November 1, 2001, granted defendant Telnet's motion for partial summary judgment filed on July 6, 2001. In summary, the court found pursuant to Federal Rule of Civil Procedure 56 that there were no material facts in issue and that the moving party was entitled to judgment as a matter of law.

The court's order of November 1 held that because of PTL's breach, defendants Muller and Perez were relieved of their covenants not to compete. This ruling was based upon the following findings: 1) The contract among the parties, including the non-compete provisions, constituted a single integrated contract under Virginia law; 2) under the contract, PTL's failure to make the non-compete payments to Muller and Perez that came due on January 2, 2001, rendered the non-compete agreements void 30 days later on or about February 2; and 3) the automatic stay of 11 U.S.C. § 362 did not toll the automatic termination of the non-compete provisions pursuant to the integrated contract.

### PTL's Motion to Alter Or Amend.

PTL has timely moved, pursuant to Federal Rule of Civil Procedure 59(e) and Federal Rule of Bankruptcy Procedure 9023, to alter or amend the judgment order of November 1, 2001, that granted Telnet's motion for partial summary judgment.

For purposes of the court's initial consideration of TelNet's summary judgment motion, the parties adopted essentially identical facts. PTL's present motion argues for a different factual interpretation of the operative contract between plaintiff and defendants Muller and Perez. This argument is discussed below.

PTL's motion requests the court to withdraw the earlier order and deny the motion for partial summary judgment based upon three basic arguments:

1) The court's ruling deprived PTL of its ability either (a) to cure the default under Bankruptcy Code § 1123 or § 1124 or (b) to assume or reject the executory contract under § 365.

2) Under terms of the contract, the non-compete provisions did not become void until 60 days after PTL failed to make the payments due January 2, 2001 (i.e., on or about March 2, 2001). Thus the non-compete provisions were in effect and were breached by Muller and Perez when they resigned from PTL on February 15, 2001.

3) There are material issues of fact which preclude the applicability of summary judgment.

### Discussion and Conclusions of Law.

■ Federal Rule of Civil Procedure 59(e) permits the court to correct errors by amending an earlier judgment. Three limited grounds for amendment are recognized in this circuit:

(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.

*Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.,* 148 F.3d 396, 403 (4th Cir.1998), *cert. denied,* 525 U.S. 1104, 119 S.Ct. 869, 142 L.Ed.2d 771 (1999).

The court considers each of PTL's arguments in determining whether grounds for amendment are met.

*(1) PTL should be given the opportunity to cure the default or accept or reject the executory contract.*

PTL's present argument varies from that which it made in opposition to the summary judgment motion. In essence its earlier position was that the various agreements among the parties did not constitute a single integrated contract or an executory contract. Without discussion, the court rejected this argument and in granting partial summary judgment ruled that the agreements were a single integrated contract. (The court did not make a ruling on whether the contract was executory. However, for purposes of the present discussion, the court assumes without deciding that the contract is executory.)

PTL's motion to alter or amend the judgment accepts the court's ruling on the nature of the contract and in conformity with this presents a new variation of its original argument: Code §§ 1123 and 1124 allow it to cure the payment defaults in a plan of reorganization and thus return the parties to the *status quo ante.* Similarly, § 365 provides for the debtor to accept or reject the executory contract.

PTL cites ample case authority and makes persuasive argument in favor of these two undoubted general rules of bankruptcy law. However, the court rejects the argument and stands by the initial ruling that the non-compete provisions became void by operation of emphatic and unambiguous provisions of the parties' contract. PTL does not question the court's earlier conclusion that the automat-ic stay did not intervene to preclude this result.

In the court's view, there is a signal difference between the circumstances in the cases PTL relies upon and the present case. This difference relates to the nature of Muller's and Perez's personal services contract. This is a court of equity, and I will not disregard the provisions voiding the non-compete agreements. To do so would allow PTL to hold Muller and Perez hostage to their covenants until PTL either seeks to cure the defaults in a plan of reorganization, which is wholly untenable, or until one of the parties forces the issue of acceptance or rejection of the executory contract.

While it is true that Muller and Perez could have filed a motion to compel PTL to accept or reject the agreements, there was no reason for them to do this after PTL defaulted in payment. Their contract gave them an absolute right to walk away from PTL's employ, as they chose to do, relieving PTL of any further financial obligation to them.

The court agrees with the argument of the individual defendants' counsel that PTL's asserted desire or ability to cure the defaults under a plan of reorganization or to accept the executory contract is illusory. PTL made it known as early as the entry of the 13th interim cash collateral order on November 20, 2001, that it intends to sell all or substantially all of its assets. This sale is scheduled for court approval on January 29, 2002.

In the absence of a plan of reorganization, there is no basis for PTL to cure its default of the non-compete provisions under § 1123 or § 1124. Likewise, whether or not there is a plan of reorganization, PTL would be unable to cure, accept and transfer Muller's and Perez's personal services contracts to a third party. *See Reynolds & Reynolds Co. v. Hardee,* 932

F.Supp. 149, 155 (E.D.Va.1996); *Breeden v. Catron (In re Catron)*, 158 B.R. 624, 627 (Bankr.E.D.Va.1992).

*(2) The non-compete provisions of the contract did not become void until 60 days after PTL failed to make the payments due January 2, 2001.*

PTL makes an ingenious argument that it was in default on the payments due defendants only after the expiration of two consecutive 30 day periods. The court rejects this argument without discussion.

*(3) Summary judgment is precluded by an outstanding material issue of fact.*

 PTL argues that there is an unresolved issue of fact as to whether Muller and Perez were in breach of their contract prior to February 2, 2001, the date on which the court held the non-compete provisions became void. According to PTL, if the court should ultimately find that these defendants were in breach of the contract before PTL's default, then under Virginia law PTL had no obligation to make the payments, and defendants would continue to be bound by their covenants. *See Horton v. Horton*, 254 Va. 111, 114–15, 487 S.E.2d 200 (Va.1997).

It is significant that this argument is raised for the first time in PTL's motion to alter or amend. When the court considered Telnet's original motion for partial summary judgment, the parties were in precise agreement on the facts, and no assertion was made that there were issues of fact that would bar summary judgment.

PTL's motion places the blame for the newly raised factual issue on Muller and Perez, who, following entry of the order of November 1, 2001, "finally provided PTL with responses to interrogatories ...." Seizing on *one* of these answers along with an e-mail earlier provided by Telnet, PTL argues that this evidence raises a factual issue· as it suggests Muller and Perez

breached their covenants by negotiating for employment with Telnet prior to February 2, 2001.

At hearing on the motion to alter or amend, PTL's counsel advised the court that PTL had more recently received additional discovery in further support of its new facts argument. The court has not examined any of the new material alluded to by counsel but for present purposes accepts counsel's characterizations.

In rebuttal of PTL's position, counsel for Muller and Perez filed on December 20, 2001, a supplemental memorandum in support of these defendants' objection to the motion to alter or amend. In this memorandum, counsel informs the court that the defendants are preparing to amend their answers to interrogatories. The amendments will clarify the original answers and make clear that they did not negotiate employment with Telnet until after February 2, 2001. The court is not aware that PTL has contested this revelation and will therefore disregard the original answers as raising a material issue of fact.

As to PTL's third argument then, the court has only PTL's oral representations of newly discovered evidence, along with its argument that this evidence provides a basis for the court to find there is a material issue of fact.

As stated above, the Fourth Circuit recognizes only three grounds for altering or amending an earlier judgment under Rule 59(e). PTL's third argument focuses on the second requirement, which allows amendment of a ruling "(2) to account for new evidence not available at trial ...." *Pacific Ins. Co.*, 148 F.3d at 403 (citing *EEOC v. Lockheed Martin Corp., Aero & Naval Sys.*, 116 F.3d 110, 112 (4th Cir. 1997); *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir.1993)).

New evidence in the context of Rule 59(e) refers to evidence newly discovered after the hearing; the rule may not be used "to raise arguments which could have been raised prior to the issuance of the judgment ...." *Id.; see also Wal–Mart Stores, Inc. v. El–Amin (In re El–Amin),* 252 B.R. 652, 654 (Bankr.E.D.Va.2000) (holding that rule 59(e) does not allow "a losing party to simply repeat old arguments already considered and rejected or to raise new legal theories that should have been raised earlier."). Supporting this principle, the Seventh Circuit has held that a rule 59(e) motion "is not authorized 'to enable a party to complete presenting his case after the court has ruled against him.'" *In re Reese,* 91 F.3d 37, 39 (7th Cir.1996) (quoting *Frietsch v. Refco, Inc.,* 56 F.3d 825, 828 (7th Cir.1995)). In other words, if evidence could have been introduced earlier, it is not considered newly discovered.

In filing a motion to reconsider based on newly discovered evidence, a party attests that the evidence "could not with reasonable diligence" have been discovered and presented at hearing. *In re Wright,* 186 B.R. 394, 397 (Bankr.D.Md.1995) (quoting *Boryan v. U.S.,* 884 F.2d 767, 771 (4th Cir.1989)). Based on the materials before the court, PTL was aware of the "newly discovered" evidence well before the hearing on motion for summary judgment. "Evidence which was available to a party during the pendency of a motion for summary judgment may not later be introduced on a motion to reconsider." *Sussman v. Salem, Saxon & Nielsen, P.A.,* 153 F.R.D. 689, 695 (M.D.Fla.1994); *see also Dale & Selby Superette & Deli v. USDA,* 838 F.Supp. 1346, 1348 (D.Minn.1993) (holding that evidence available at the time of the summary judgment motion must be presented then, or defendant loses its right as matter of law to move for reconsideration on that basis). The court has "consid-erable discretion" in its decision on whether to grant the rule 59(e) motion. *Wal–Mart Stores, Inc. v. El–Amin (In re El–Amin),* 252 B.R. 652, 654 (Bankr.E.D.Va. 2000).

When a party stipulates to facts under a summary judgment motion while there is ongoing discovery that might impact the court's ruling, the court finds it difficult to justify giving that party another round on the same motion. Accordingly, the court finds that the so-called newly discovered evidence does not warrant setting aside the order of November 1, 2001.

Finally, it has been suggested in some of the papers filed by the parties in connection with the summary judgment that PTL's primary concern with the order of November 1 may be that the court's ruling undercuts PTL's position on other counts of the complaint. While there can be no assurance that the order granting summary judgment will have no impact on other aspects of the adversary proceeding, the court believes that the ruling of November 1, 2001, was limited to the specific issues raised over defendants' covenants not to compete and did not infer any conclusions about other issues under the complaint.

A separate order will be entered denying PTL's motion to alter or amend the order of November 1, 2001.