sum of money, and you can get it whenever you may apply for it. Until the Denver bank should agree to such holding in some form, or should send for the money by draft, or otherwise, no transfer of the fund would take place. And whether this would have been done by the Denver bank at any time if the Mastin Bank had continued in business, is matter for conjecture only. They were not bound to act, and we cannot assume that they would have taken any steps to get the money. That is not, however, of any importance in this connection; it is only necessary to say that defendants were instructed to send the money to the Exchange Bank, and they have not done it.

That they acted in good faith, upon the assumption that the Exchange Bank would accept the credit in the Mastin Bank, and that the course pursued by them was sanctioned by commercial usage at Kansas City, will not help them. They should have put the money into the Exchange Bank, or adopted the usual and ordinary means to effect that end; and having failed to do either, and to show affirmatively that such failure was not the cause of the loss, they must be held for the amount. The judgment will be for the plaintiff. Judgment accordingly.

## Case No. 4,521.

### The EROE.

[9 Ben. 191.][1]

District Court, E. D. New York. July, 1877.[2]

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed in Case No. 4,522.]

Beebe, Wilcox & Hobbs, for libellant.

Butler, Stillman & Hubbard, for claimant.

BENEDICT, District Judge. This action is brought upon a bill of lading to recover for damages to almonds caused by petroleum. The interlocutory decree determined that the libellant was entitled to recover the damages caused by petroleum to the almonds in question.

The evidence taken before the commissioner shows 192 bags of almonds damaged by petroleum. It also appears that these same bags were stained by salt water and by wine. The evidence fails to show the proportion of injury arising from these different causes. In this state of the proofs it must be assumed that no diminution in value was caused to almonds injured by petroleum by the contact with sea water or wine. The damage, from the character of the injury, was caused by petroleum. The difference then between the market value of the almonds in the 192 bags as they arrived, and the sound value of the almonds, is the true measure of damages.

It has been claimed on the part of the respondents that the libellant must give credit for any rebate of duties that he may have received upon these damaged bags, and I am referred to a decision where such rebate was taken into consideration in determining the amount of damages to cargo. The Carlotta [Case No. 2,413].

With all my respect for the learned judge who made the decision referred to, I am unable to agree with him. The market price of a merchantable commodity must furnish the test of value. To take into consideration the amount of duty paid upon an article in determining its value, is, according to my view, to resort to cost as a test of value. The rate of duty doubtless is an element which goes to fix market value, but the amount paid for duties upon any particular article is not taken into consideration in determining the value of that article. The article sells for the same, whether the owner paid or escaped paying the duty. So in this instance the damaged almonds were worth the same in the market, whether the libellant paid the whole or a part or none of the duty. And the difference between that value and the market value of sound almonds shows the amount of injury caused by the failure of the ship-owner to perform his contract.

Any advantage which the freighter has gained in adjusting the duties was an advantage to him in his contract with the gov-

ernment, not a benefit to the goods arising from the act of the ship-owner. The ship-owner is no party to the dealing of the freighter with the government, and the result of that dealing cannot inure to his benefit, otherwise the ship-owner might claim to take upon himself the adjustment of the duty, and if not permitted, he. might ask to show in diminution of his liability, that if permitted, he would have obtained a larger rebate.

Upon these grounds I must reject the claim of the respondents that the rebate of duties obtained by the libellant from the government be credited to them, in calculating the damage arising from their negligence.

The bags damaged by petroleum were sold at a loss of $140.39, and this sum the libellant claims should be allowed him as his damages. The damaged almonds were kept in store some fifteen months before they were sold, and when sold, it was without notice to the ship. There is evidence that the almonds were sold in the usual way, and some evidence that no material change in the market occurred while they were in store. On the other hand, it is shown that soon after the arrival of the cargo, the consignees caused an estimate of the damage to be made by their own broker, and upon such estimate sent in a bill to the ship for $100 as the damage. I am of the opinion that the respondents can resort to this bill rendered as showing that a difference in value did occur between the time of arrival and time of sale, in which case there being no other proof, it must be taken as evidence of the amount of such difference. Of this the consignees cannot complain, as it is their own bill.

The libellant is therefore entitled to recover $100 with interest from the date of the arrival of the ship.

## Case No. 4,522.

### The EROE.

[17 Blatchf. 16.][1]

Circuit Court, S. D. New York. Aug. 11, 1879.[2]

---

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]
[2] [Affirming Case No. 4,521.]

Beebe, Wilcox & Hobbs, for libellant.
Butler, Stillman & Hubbard, for claimant.

BLATCHFORD, Circuit Judge. The libel claims $300 for damage to 1,503 bags of almonds in the shell, the damage being alleged to have been caused by the improper stowage of the almonds, so that they were injured by oil and wine. The district court found, from the proofs, that the contents of 192 of the bags were, on arrival, injured by contact with petroleum oil, and that the vessel was responsible for such damage. On a reference to ascertain the amount of such damage, the referee reported that no damages to the libellant were proved. On exceptions to the report by the libellant, the district court sustained the exceptions, and made a decree awarding to the libellant, as damages, $100, with $15 75 interest and $112 57 costs, being $228 32, in all. [Case No. 4,521.] The libellant is satisfied with this decree, and has not appealed. The claimant has appealed. The district court held, that the diminution of the almonds in value was wholly caused by petroleum, and that the proper measure of damage was the difference between the market value of the almonds in the 192 bags, as they arrived, and their sound value. This the court fixed at $100, and it allowed interest thereon from the date of the arrival of the vessel.

The claimant insisted, before the district court, that the libellant ought to give credit for a rebate of duties which he had received from the United States government, on the damaged almonds in the 192 bags, on account of petroleum damage; and that the amount of such rebate exceeded $100. The district judge rejected this view, and said, in his decision: "The market price of a merchantable commodity must furnish the test of value. To take into consideration the amount of duty paid upon an article, in determining its value, is, according to my view, to resort to cost as a test of value. The rate of duty, doubtless, is an element which goes to fix market value, but the amount paid for duties upon any particular article is not taken into consideration, in determining the value of that article. The article sells for the same, whether the owner paid or escaped paying the duty. So, in this instance, the damaged almonds were worth the same in the market, whether the libellant paid the whole, or a part, or none, of the duty; and the difference between that value and the market value of sound almonds shows the amount of injury caused by the failure of the ship-owner to perform his contract. Any advantage which the freighter has gained in adjusting the duties, was an advantage to him in his contract with the government, not a benefit to the goods arising from the act of the ship-owner. The ship-owner is no party to the dealings of the freighter with the government, and the result of that dealing cannot inure to his benefit: otherwise, the ship-