RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 06a0373p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

CHARLES R. MORRISON, DONALD E. ECKHART, and
ALEXANDER SMITH,

                *Plaintiffs-Appellants,*

     *v.*

MICHAEL F. COLLEY, CAROLYN C. PETREE,
WILLIAM A. ANTHONY, JR., KIMBERLY E.
MARINELLO, and FRANKLIN COUNTY BOARD OF
ELECTIONS,

                *Defendants-Appellees.*

No. 06-4216

---

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 06-00644—George C. Smith, District Judge.

Argued: September 20, 2006

Decided and Filed: September 22, 2006[*]

Before: SILER, GILMAN, and GRIFFIN, Circuit Judges.

---

## COUNSEL

**ARGUED:** David R. Langdon, LANGDON & HARTMAN LLC, Cincinnati, Ohio, for Appellants. Patrick J. Piccininni, PROSECUTING ATTORNEY'S OFFICE FOR THE COUNTY OF FRANKLIN, Columbus, Ohio, for Appellees. **ON BRIEF:** David R. Langdon, Curt C. Hartman, Joshua B. Bolinger, LANGDON & HARTMAN LLC, Cincinnati, Ohio, Christopher P. Finner, FINNEY, STAGNARO, SABA & KLUSMEIER CO., L.P.A., Cincinnati, Ohio, for Appellants. Patrick J. Piccininni, Nick A. Soulas, Jr., PROSECUTING ATTORNEY'S OFFICE FOR THE COUNTY OF FRANKLIN, Columbus, Ohio, for Appellees.

---

[*]An interim opinion was filed in this matter on September 22, 2006. The court is now filing this more detailed opinion.

---
**OPINION**
---

GRIFFIN, Circuit Judge.  Plaintiff-appellant Charles R. Morrison sought to run as an independent candidate for the office of United States Representative in Ohio's Fifteenth Congressional District ("CD") in the November 7, 2006, election.  Defendants-appellees Franklin County Board of Elections ("BOE"), *et al.,* excluded Morrison from the ballot on the ground that, under Ohio election law, he did not qualify as an independent candidate because he was affiliated with a political party.  Morrison filed an action in the United States District Court for the Southern District of Ohio seeking preliminary and permanent injunctions requiring the BOE to place him on the ballot.  Morrison claimed that the Ohio statutory provision violated his First and Fourteenth Amendment rights and those of his would-be voters because it was allegedly overbroad, illegally discriminatory, and void for vagueness.  After the district court denied Morrison all relief, Morrison appealed to this court.  We granted Morrison's motion to expedite the appeal and heard oral argument on September 20, 2006.  On September 22, 2006, we issued a per curiam interim opinion unanimously affirming the district court, stating, "despite any constitutional infirmities that *may* exist in the relevant Ohio statutes as they might apply to others, there is no reasonable basis for Morrison to claim in good faith that he is not affiliated with a political party."  (Emphasis added.)  Today we explain our holding in greater detail.

I.

In December 2005 and January 2006, Morrison began circulating petitions seeking placement on the May 2, 2006, ballot for the Madison County Republican Party Central Committee and the Ohio Republican Party State Central Committee.  Morrison filed his petitions, was certified as a candidate in the Republican primary for the state and county committee positions, and appeared on the May 2, 2006, Republican primary ballot.  He lost both races.

Morrison filed his declaration of candidacy for the county committee on a form that stated, "This petition shall be circulated only by a member of the same political party as stated above by the candidate."  Morrison signed the declaration, which also required him to state, under penalty of "election falsification," that he was a member of the Republican Party.  Likewise as to the state committee, Morrison signed a declaration of candidacy that required him to state, under penalty of election falsification, that he was a member of the Republican Party.

Approximately three weeks before the May 2, 2006, Republican primary, Morrison purchased local newspaper advertisements supporting his state and county committee candidacies.  In his ads, Morrison stated that he was a Republican.  On May 2, 2006, Morrison requested a Republican ballot and voted in the Republican primary.

On May 1, 2006, the day before Morrison's name appeared on the ballot in the Republican primary, he filed nominating petitions with the BOE to run as an independent candidate in Ohio's Fifteenth CD.

On May 22, 2006, three residents and qualified electors from the Fifteenth CD filed a written protest challenging Morrison's congressional candidacy on the ground that he was not an independent under Ohio law, and the BOE responded by holding a protest hearing.  After receiving briefs and hearing argument at the hearing, the BOE deadlocked 2-2 on whether to certify Morrison as an independent candidate.  Pursuant to Ohio Rev. Code § 3501.05, the matter was referred to the Ohio Secretary of State, who voted in favor of the protestors and against certification.

Morrison brought suit in the district court under 42 U.S.C. § 1983, and thereafter the district court held a hearing on the merits.

## II.

Because Morrison alleged the violation of rights recognized by the First and Fourteenth Amendments to the U.S. Constitution, the district court had federal-question jurisdiction under 28 U.S.C. § 1331.  Regarding our jurisdiction, the district court consolidated the hearing on Morrison's preliminary injunction application with the hearing on the merits, and its order disposed of Morrison's complaint and request for permanent injunctive relief.  Accordingly, the district court's order is final and immediately appealable.  We review the district court's legal conclusions de novo and its factual findings for clear error.  *Planned Parenthood Cincinnati Region v. Taft*, 444 F.3d 502, 507 (6th Cir. 2006) (citing *Taubman Co. v. Webfeats*, 319 F.3d 770, 774 (6th Cir. 2003)).

## III.

Recently, in *Clingman v. Beaver*, 544 U.S. 581 (2005), the Supreme Court emphasized that not all election regulations that burden First Amendment rights are subject to a strict scrutiny analysis.  Rather, unless a state election regulation places a heavy or severe burden on a party, "a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions."  *Id.* at 587 (quoting with approval *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997)).

In holding that an Oklahoma statute allowing political parties to open their primary elections to only their own party members and voters registered as independents did not violate the First Amendment, the Supreme Court refused to apply a strict scrutiny analysis because the burden was not "severe":

> [O]ur cases since *Tashjian* [*v. Republican Party of Conn.*, 479 U.S. 208 (1986)] have clarified [that] strict scrutiny is appropriate only if the burden is severe. [*California Democratic Party v.*] *Jones*, [530 U.S. 567 (2000)], *supra*, at 582, 147 L. Ed. 2d 502, 120 S.Ct. 2402; *Timmons*, 520 U.S. at 358, 137 L. Ed. 2d 589, 117 S.Ct. 1364.

* * *

> Many electoral regulations, including voter registration generally, require that voters take some action to participate in the primary process.  *See, e.g., Rosario v. Rockefeller*, 410 U.S. 752, 760-62, 36 L. Ed. 1, 93 S. Ct. 1245 (1973) (upholding requirement that voters change party registration 11 months in advance of the primary election).  Election laws invariably "affec[t] – at least to some degree – the individual's right to vote and his right to associate with others for political ends." *Anderson v. Celebrezze*, 460 U.S. 780, 788, 75 L. Ed. 2d 547, 103 S. Ct. 1564 (1983).

> These minor barriers between voter and party do not compel strict scrutiny.  See *Bullock v. Carter*, 405 U.S. 134, 143, 31 L. Ed. 2d 92, 92 S. Ct. 849 (1972).  To deem ordinary and widespread burdens like these severe would subject virtually every electoral regulation to strict scrutiny, hamper the ability of States to run efficient and equitable elections, and compel federal courts to rewrite state electoral codes.  The Constitution does not require that result, for it is beyond question "that States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Timmons*, *supra*, 520 U.S. at 358, 137 L. Ed. 2d 589, 117 S. Ct. 1364; *Storer v. Brown*, 415 U.S. 724, 730,

39 L. Ed. 2d 714, 94 S. Ct. 1274 (1974).  Oklahoma's semiclosed primary system does not severely burden the associational rights of the state's citizenry.

C

When a state electoral provision places no heavy burden on associational rights, "a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Timmons*, *supra*, at 358, 137 L. Ed. 2d 589, 117 S. Ct. 1364 (internal quotation marks omitted); *Anderson*, *supra*, at 788, 75 L. Ed. 2d 547, 103 S. Ct. 1564.

*Clingman*, 544 U.S. at 592-93.  *Clingman* follows, and is consistent with, *Timmons*, which likewise refused to apply strict scrutiny to a challenge to a Minnesota election law prohibiting multi-party or "fusion" candidates from appearing on the ballot.  In rejecting a claim that the Minnesota regulation violated the plaintiff's First and Fourteenth Amendment rights, the Supreme Court stated,

[I]t is also clear that States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder. *Burdick* [*v. Takushi*, 504 U.S. 428 (1992)], *supra*, at 433 ("'[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process'") (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)); *Tashjian*, *supra*, at 217 (The Constitution grants States "broad power to prescribe the 'Time, Places and Manner of holding elections for Senators and Representatives', Art. I, § 4, cl. 1, which power is matched by state control over the election process for state offices").

When deciding whether a state election law violates First and Fourteenth Amendment associational rights, we weigh the "'character and magnitude'" of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary. *Burdick*, *supra*, at 434 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)).  Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest.  Lesser burdens, however, trigger less exacting review, and a State's "'important regulatory interests'" will usually be enough to justify "'reasonable, nondiscriminatory restrictions.'" *Burdick*, *supra*, at 434 (quoting *Anderson*, *supra*, at 788); *Norman* [*v. Reed*, 502 U.S. 279 (1992)], *supra*, at 288-289 (requiring "corresponding interest sufficiently weighty to justify the limitation").  No bright line separates permissible election-related regulation from unconstitutional infringements on First Amendment freedoms.  *Storer*, *supra*, at 730 ("[N]o litmus-paper test . . . separat[es] those restrictions that are valid from those that are invidious . . . .  The rule is not self-executing and is no substitute for the hard judgments that must be made.").

*Timmons*, 520 U.S. at 358-59.

The district court concluded correctly that Ohio Rev. Code § 3513.257 does not impose a severe restriction on the First and Fourteenth Amendment rights of Morrison or other potential independent candidates or voters.  *See Lawrence v. Blackwell*, 430 F.3d 368 (6th Cir.) (Ohio statute requiring independent congressional candidates to file statement of candidacy and nominating petition on the day preceding the primary election did not impose a severe burden on independent candidates' or voters' constitutional rights, so strict scrutiny was not warranted), *cert. denied*, __ U.S. __, 126 S. Ct. 2352 (2006).  The election regulation at issue is merely a reasonable, nondiscriminatory regulation to require would-be independent candidates to claim, no later than 4:00

p.m. of the day before the primary elections, that they are free of affiliation with any political party. Therefore, Ohio need only show that this requirement advances an important state interest, not a compelling state interest. *Id.* For the reasons stated by the district court, the non-affiliation requirement passes muster under this deferential standard. In addition, the statute itself specifies the following important state interests furthered by the election regulation:

> The purpose of establishing a filing deadline for independent candidates prior to the primary election immediately preceding the general election at which the candidacy is to be voted on by the voters is to recognize that the state has a substantial and compelling interest in protecting its electoral process by encouraging political stability, ensuring that the winner of the election will represent a majority of the community, providing the electorate with an understandable ballot, and enhancing voter education, thus fostering informed and educated expressions of the popular will in a general election. The filing deadline for independent candidates required in this section prevents splintered parties and unrestrained factionalism, avoids political fragmentation, and maintains the integrity of the ballot. The deadline, one day prior to the primary election, is the least drastic or restrictive means of protecting these state interests. The general assembly finds that the filing deadline for independent candidates in primary elections required in this section is reasonably related to the state's purpose of ensuring fair and honest elections while leaving unimpaired the political, voting, and associational rights secured by the first and fourteenth amendments to the United States Constitution.

OHIO REV. CODE § 3513.257.

As the Supreme Court recognized in *Timmons*, a state may, consistent with the First Amendment, ban "fusion" or multi-party candidates in order to reduce election disorder. *Cf. Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579 (6th Cir. 2006).

In summary, we hold that the First and Fourteenth Amendments do not prohibit the Ohio General Assembly from requiring independent candidates to claim on the day before the primary that they are not affiliated with any political party.

IV.

Next, Morrison argues that the statute is void for vagueness because it allegedly fails to specify what a putative independent candidate must do to get on the ballot, and because it does not provide objective standards for enforcement. His argument is wholly unpersuasive under the facts of this case.

Under *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972), a statute must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited" or, in this case, what is required. In addition, the statute "must provide explicit standards for those who apply them." *Id. Cf. Risbridger v. Connelly*, 275 F.3d 565, 572 (6th Cir. 2002) ("[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.") (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)).

The district court rejected Morrison's argument that the statute "creates confusion as to . . . whether a person desiring to become an independent candidate can merely claim not to be affiliated with a political party or whether they must truly be unaffiliated with a political party." The district court reasoned, "a person of ordinary intelligence, when considering O.R.C. § 3513.257 [which requires the candidate to claim independence] and O.R.C. § 3501.01(I) [which defines an

'independent' candidate as one 'who claims not to be affiliated with any political party'] in the whole legislative scheme, would understand that an aspiring independent candidate 'must actually be independent, rather than merely claim it.'"  A candidate possessing ordinary intelligence and common sense would readily understand that the claim of independence must be made in good faith – otherwise there would be no reason for having the claim requirement, and none of the state interests animating the claim requirement would be served.  *See United States v. Gjieli*, 717 F.2d 968, 972 (6th Cir. 1983).

In addition to the common-sense meaning of "claim" in Ohio Rev. Code § 3513.257, other sections of the Ohio election code put Morrison on notice that his actions were incompatible with his contemporaneous claim that he was not affiliated with any political party.  Provisions of the Ohio election code other than § 3513.257 discuss political party affiliation and specify how it may be determined when challenged.  This is significant, because typically "identical words used in different parts of the same act are intended to have the same meaning."  *OfficeMax, Inc. v. United States*, 428 F.3d 583, 591 (6th Cir. 2005) (quoting *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 570 (1995)).[1]

First, Ohio Rev. Code § 3513.19(A)(3) provides that a person's right to vote in a party's primary can be challenged on the basis that he "is not affiliated with or is not a member of" that party.  That section also states, in pertinent part, that "[s]uch party affiliation shall be determined by examining the elector's voting record for the current year and the immediately preceding two calendar years as shown on the voter's registration card, using the standards of affiliation specified in the seventh paragraph of section 3513.05 of the Revised Code."  OHIO REV. CODE. § 3513.19(A)(3).  In turn, § 3513.05 ¶ 7 considers a voter to be affiliated with a party if he was registered with that party and voted in that party's primaries during the current year and the two preceding years.  Morrison has never denied that he was registered as a Republican and voted in the May 2, 2006, Republican primary, nor has he claimed that he was ever registered as something other than a Republican or that he voted in non-Republican primaries during the preceding two calendar years.

Moreover, the next subsection of the statute, Ohio Rev. Code § 3513.19(B), provides:

> When the right of a person to vote is challenged upon the ground set forth in division (A)(3) of this section, membership in or political affiliation with a political party shall be determined by the person's statement, *made under penalty of election falsification*, that the person desires to be affiliated with and supports the principles of the political party whose primary ballot the person desires to vote.

(Emphasis added.)  By registering as a Republican and then affirmatively requesting and voting the Republican Party primary ballot on May 2, 2006, Morrison necessarily evinced a desire to be affiliated with the Republican Party at that time.  Indeed, when Morrison presented himself as eligible to vote in the Republican primary on May 2, 2006, Ohio law required him to be prepared to prove, *under penalty of punishment for false statement*, that he was affiliated with the Republican Party:

> Before any challenged person shall be allowed to vote at a primary election, the person shall make a statement, *under penalty of election falsification*, before one of

---

[1] *See also Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 536 (6th Cir.) (Moore, J., for the court, joined in pertinent part by Katz, U.S.D.J.) (referring to "[t]he usual presumption that 'the same words used twice in the same act have the same meaning'") (quoting 2A NORMAN J. SINGER, SUTHERLAND ON STATUTES AND STATUTORY CONSTRUCTION, § 46.06, at 193 (6th ed. 2000)), *cert. denied*, 543 U.S. 821 (2004); *Lake Cumberland Trust, Inc. v. EPA*, 954 F.2d 1218, 1222 (6th Cir. 1994) ("We must presume that words used more than once in the same statute have the same meaning.") (citation omitted).

the precinct officials . . . stating that the person desires to be affiliated with and supports the principles of the political party whose ballot the person desires to vote; and giving all other facts necessary to determine whether the person is entitled to vote in that primary election. The statement shall be returned to the office of the board with the pollbooks and tally sheets.

OHIO REV. CODE § 3513.20.

If there were any doubt whether registering Republican, running as a Republican in the primary, and voting in the Republican primary precluded a good faith claim to be unaffiliated with any party, Morrison's own Federal Election Commission ("FEC") filing dispels it. Morrison conceded that his own congressional campaign committee's statement of organization, FEC Form 1, listed him as affiliated with the Republican Party.

Morrison cannot complain if his own campaign committee's express statement of his party affiliation is considered and used to rule against him. *Cf. In re El-Amin*, 252 B.R. 652, 659 (Bankr. E.D. Va. 2000) ("The party who made the admission cannot complain that they [sic] were prejudiced by their own words."); *Levy v. United States*, 1858 WL 4645, at \*27 (Ct. Cl. May 4, 1858) ("The petitioner cannot object to this conclusion, because it is in exact accordance with his own export manifest, rendered on his own oath.").[2]

Most importantly, under Ohio law, if Morrison was unaffiliated with any political party on May 1, 2006, as he contends, he could not also claim in good faith to be a Republican at the same time without risking consequences more serious than exclusion from the ballot. Specifically, Ohio Rev. Code § 3599.11(A) provides the following criminal penalties for false swearing: "No person shall knowingly swear or affirm falsely upon a lawful examination by or before any registering officer; or make, print, or issue, any false . . . certificate of registration . . . . No person shall . . . knowingly make any false statement on any form for registration or change of registration . . . . Whoever violates this division is guilty of a felony of the fifth degree."

A person of ordinary intelligence in the position of Morrison is put on notice that "claims" of party affiliation or non-affiliation must be made in good faith; otherwise the person is subject to criminal prosecution.

We conclude that the statutes at issue gave Morrison sufficient notice that his claims of party affiliation or non-affiliation had to be made in good faith when he filed his independent congressional candidacy petition on May 1, 2006. Further, under the undisputed facts of this case, Morrison's claim of unaffiliation with a political party was not made in good faith.

For these reasons, we hold that, under the facts of this case, Ohio Rev. Code § 3513.257 is not void for vagueness. *Cf. McEntee v. Merit Sys. Prot. Bd.*, 404 F.3d 1320, 1333-34 (Fed. Cir.),

---

[2] *Cf. also United States v. Beal*, 940 F.2d 1159, 1162 (8th Cir. 1991) ("[D]efendant cannot complain if his own admissions . . . [are] received in evidence against him.");

*United States v. Alvarez*, 810 F.2d 879, 889 (9th Cir. 1987) ("The defendant cannot complain when his own testimony fixes the time of his arrest.");

*Courtney v. United States*, 518 F.2d 514, 517 (4th Cir. 1975) ("[T]he defendant cannot be heard to complain that he was convicted on the basis of his own testimony.");

*United States v. Bates*, 141 F.2d 436, 439 (7th Cir.) ("Defendant cannot complain if the jury accepted at their face value his own statements . . . ."), *vac'd on other grounds*, 323 U.S. 15 (1944);

*The Eroe*, 9 Ben. 191, 8 F. Cas. 774, 775 (E.D.N.Y. 1877) (No. 4,521) ("[T]he respondents can resort to this bill rendered . . . there being no other proof, it must be taken of evidence of the amount of such difference. Of this the consignees cannot complain, as it is their own bill."), *aff'd*, 17 Blatchf. 16, 8 F. Cas. 775 (C.C.S.D.N.Y. 1879) (No. 4,522).

*cert. denied*, __ U.S. __, 126 S. Ct. 381 (2005).  In addition, for the reasons stated by the district court, we hold that Ohio Rev. Code § 3513.257 is not overbroad, nor was it applied in a manner that illegally discriminated against Morrison.

V.

In conclusion, we affirm the district court's denial of Morrison's application for preliminary and permanent injunctive relief.  Morrison has not provided grounds to enjoin defendants from excluding him from the November 2006 congressional ballot due to his non-compliance with Ohio Rev. Code § 3513.257.

Affirmed.