PER CURIAM OPINION
{¶ 1} This action in mandamus is presently before this court for consideration of the motion to dismiss of respondents, the Trumbull County Board of Elections and its four individual members. As the primary grounds for their motion, respondents contend that relators, David Wilkerson, Myron Esposito, and Timothy O'Hara, have failed to state a viable claim for the writ because their factual allegations support the conclusion that respondents did not have a legal obligation to approve their respective petitions to be *Page 2 
independent candidates for certain public offices. For the following reasons, this court concludes that the motion to dismiss has merit.
 {¶ 2} David Wilkerson is presently both a resident and qualified voter of the First Ward of the City of Niles, Trumbull County, Ohio. On May 7, 2007, Wilkerson filed with respondents a nominating petition and statement of candidacy to run as an independent candidate for the office of First Ward Councilman in the City of Niles. This nominating petition generally complied with the requirements of R.C. Chapter 3513 for running as an independent, and no protest was ever filed in regard to his candidacy.
 {¶ 3} Myron Esposito is presently both a resident and qualified voter of the City of Girard, Trumbull County, Ohio. On May 7, 2007, Esposito submitted to respondents a nominating petition and statement of candidacy to run an as independent candidate for the office of Mayor of the City of Girard. Like Wilkerson, Esposito's petition generally complied with the statutory requirements for independent candidates, and his petition was never the subject of a proper protest.
 {¶ 4} Timothy O'Hara is presently both a resident and qualified voter of the City of Hubbard, Trumbull County, Ohio. On May 7, 2007, he filed a nominating petition and statement of candidacy to run as an independent candidate for the office of Mayor of the City of Hubbard. O'Hara's petition also satisfied the statutory requirements for running as an independent. Similarly, no protests were ever submitted concerning his petition.
 {¶ 5} One day after submitting their respective nominating petitions, each of the foregoing individuals participated in the primary election which, inter alia, pertained to the specific offices they sought to win in the November 2007 general election. In order to vote in that primary election, it was necessary for Wilkerson, Esposito, and O'Hara to *Page 3 
declare their affiliation with a specific party.
 {¶ 6} Approximately twenty-five days following the May 2007 primary election, respondents received a written advisory from Jennifer Brunner, Ohio Secretary of State. This advisory addressed the issue of when a person can qualify under R.C. 3513.257 to run as an independent candidate for a public office. Specifically, the Secretary of State indicated that a "longstanding" interpretation of the statute had recently been modified by the United States Court of Appeals for the Sixth Circuit in Morrison v. Colley (6th Cir., 2006), 467 F.3d 503. According to the Secretary of State, the earlier interpretation had allowed a person to proceed as an independent so long as hiscandidacy for the office was independent of political party affiliation. However, under the new interpretation of the statute, an "independent" nominating petition should be approved only if the person himself is completely unaffiliated with any party; i.e., the person must be able to state in good faith that he is not connected to a party. In addition, the advisory cited examples of situations in which a person's actions would prohibit him from running in an election as an independent candidate.
 {¶ 7} In July 2007, respondents held a meeting for the purpose of determining whether the three nominating petitions in question should be certified so that the three individuals could be placed on the ballot for the November 2007 general election. As part of its deliberations on the matter, respondents expressly considered the analysis of the Secretary of State as to the proper application of the Morrison
decision. Focusing on the fact that Wilkerson, Esposito, and O'Hara had voted in the primary election after they had submitted their respective petitions, respondents ultimately found that none of the three individuals could meet the statutory definition of an independent candidate for *Page 4 
public office. As a result, respondents rejected the three petitions and disqualified the three individuals from running for office in the upcoming election.
 {¶ 8} In response to the foregoing decision as to the validity of their respective candidacies, Wilkerson, Esposito, and O'Hara, relators, initiated the instant proceeding for a writ of mandamus. Relators raised two arguments in support of their general contention that respondents had abused their discretion and disregarded the applicable law in concluding that they could not qualify as independent candidates. First, relators maintained that it had been improper for respondents to base their decision upon the advisory of the Secretary of State because the advisory was not issued until after they had participated in the primary election. That is, relators argued that the advisory could not be applied to them because they had not been provided any notice of the ramifications of their actions. Second, they maintained that the decision to disqualify them could not be upheld because respondents had misapplied the advisory by predicating the decision solely on the fact that they had voted in the primary election. In light of these two points, relators asserted in their claim that respondents should be compelled to approve their nominating petitions and allow their names to be placed on the ballot.[1]
 {¶ 9} In now moving to dismiss relators' entire mandamus claim, respondents have not attempted to contest any of relators' factual allegations, as summarized in the foregoing statement of facts. Instead, respondents contend that, as a matter of law, the factual allegations are insufficient to demonstrate any abuse of discretion on their part. As to relators' first argument, respondents submit that relators had adequate notice of *Page 5 
the status of Ohio law concerning independent candidates for office because the new advisory from the Secretary of State had been predicated entirely on the prior Morrison decision. In relation to the second argument under the claim, respondents submit that their conclusion in the underlying matter was consistent with the new advisory because, in deciding to disqualify relators, they followed a specific example cited by the Secretary of State.
 {¶ 10} At the outset of our discussion, this court would first note that the general requirements for a proper nominating petition of an independent candidate for a public office are contained in R.C.3513.257. In addition to delineating the number of qualified signatures such a nominating petition must have for specific offices, the statute refers to an exact date for the filing of that petition and the statement of candidacy. That is, the statute provides that the documents must be submitted by "no later than four p.m. of the day before the day of the primary election immediately preceding the general election at which such candidacy is to be voted for by the voters, * * *." In choosing this precise date for "independent" petitions, the Ohio General Assembly hoped that certain public policy considerations would be served. These considerations are stated in the last paragraph of R.C. 3513.257:
 {¶ 11} "The purpose of establishing a filing deadline for independent candidates prior to the primary election * * * is to recognize that the state has a substantial and compelling interest in protecting its electoral process by encouraging political stability, ensuring that the winner of the election will represent a majority of the community, providing the electorate with an understandable ballot, and enhancing voter education, thereby fostering informed and educated expressions of the popular will in a general *Page 6 
election. The filing deadline for independent candidates * * * prevents splintered parties and unrestrained factionalism, avoids political fragmentation, and maintains the integrity of the ballot. The deadline, one day prior to the primary election, is the least drastic means of protecting these state interests. The general assembly finds that the filing deadline for independent candidates * * * is reasonably related to the state's purpose of ensuring fair and honest elections while leaving unimpaired the political, voting, and associational rights secured by the first and fourteenth amendments to the United States Constitution."
 {¶ 12} In regard to whom may run as an independent, R.C. 3501.01(I) defines an "independent candidate" as "any candidate who claims not to be affiliated with a political party, and whose name has been certified on the office-type ballot at a general or special election through the filing of a statement of candidacy and nominating petition, as prescribed in section 3513.257 of the Revised Code."
 {¶ 13} As both sides in the instant case note in their briefing, the constitutionality of R.C. 3513.257 and 3501.01(I) was recently considered by the Sixth Circuit Court of Appeals in Morrison, supra. In that particular action, Morrison filed petitions to run in the May 2006 primary election for positions on his county central committee and the state central committee of the Republican Party. After his petitions had been accepted and his name had been placed on the primary ballot, Morrison submitted a new nominating petition to run as an independent candidate for a seat in the United States Congress. One day after filing the "independent" petition, Morrison then proceeded to vote in the primary election as a Republican.
 {¶ 14} Shortly after the May 2006 election, residents of Morrison's congressional *Page 7 
district filed a protest against his independent candidacy. Ultimately, county and state officials ruled that Morrison was not qualified to run as an independent because he had been affiliated with a political party. As a result, Morrison initiated a "1983" civil rights action in the United States District Court for the Southern District of Ohio, requesting a permanent injunction which would allow him to be a candidate in the November 2006 general election. Once the district court had entered final judgment against Morrison, he pursued an appeal to the Sixth Circuit, but that court subsequently affirmed the final judgment in all respects.
 {¶ 15} In the first aspect of its opinion, the Morrison court addressed the issue of whether the requirements of R.C. 3513.257 and3501.01(I) violated the candidate's or voter's First Amendment rights. In relation to the statutory mandate that an independent candidate must assert the lack of any party affiliation one day before the primary, the court concluded that the statutes should not be subject to a "strict scrutiny" analysis because they do not place a severe burden upon the exercise of such rights. The Sixth Circuit also concluded that, under the lower standard of scrutiny, the two statutes were constitutional because: (1) the requirements were reasonable and nondiscriminatory; and (2) the requirements advanced an important state interest by ensuring stability in the electoral process. Morrison, 467 F.3d at 508.
 {¶ 16} In the second part of its opinion, the Morrison court rejected the assertion that the two statutes were unconstitutionally vague because they could be interpreted to only mandate the candidate to "claim" that he had no party affiliation. The Sixth Circuit adopted the district court's holding that a person of ordinary intelligence would read the two statutes to require that the statement of independence must be made in good faith; *Page 8 
i.e., the two statutes could only be read to require an "actual" lack of affiliation with any party. In addition, the Sixth Circuit emphasized that other sections of the Ohio election code supported the conclusion that a mere "claim" of no affiliation was not sufficient to qualify as an independent. For example, R.C. 3513.19(B) states that when an individual seeks to vote for a particular party in a primary election, any statement concerning his desire to be affiliated with the party must be made under penalty of election falsification. Id.,467 F.3d at 509-510.
 {¶ 17} The Morrison full opinion was issued in September 2006. Approximately eight months later, the Ohio Secretary of State sent her advisory to the various county boards of elections throughout the state. As part of her discussion of the Morrison legal analysis, the Secretary of State emphasized that the Sixth Circuit had not tried to delineate an exact standard for deciding when the nominating petitions of independent candidates should be deemed valid; i.e., the Morrison court had limited its analysis to the specific facts of that case. Nevertheless, the Secretary of State concluded that it could be gleamed from the wording of Morrison that the determination of a candidate's independence could be predicated upon factors such as "past voting history, information submitted on required election-related filings, political advertisements, participation as a political party officer or member, or holding a public office for which the office holder was nominated through a political party's primary election or elected on a partisan ticket * * *." Ohio Secretary of State Advisory No. 2007-05, at p. 4.
 {¶ 18} In discussing the foregoing factors, the Secretary of State indicated that a finding of a lack of independence could not turn solely on a candidate's voting history because any person is entitled to revoke his party affiliation at any time. On the other *Page 9 
hand, the Secretary of State did conclude that a lack of independence could be based solely on a candidate's subsequent decision to vote in that year's primary election. The advisory quoted the language inMorrison which stated that once a candidate had filed a petition to run as an independent a particular year, he cannot logically participate in the primary that same year because his claim of party affiliation for purposes of voting would conflict his prior claim in the nominating petition of independence. The Secretary of State summarized this point in the following manner:
 {¶ 19} "If an independent candidate votes in a party primary election after filing as an independent, the candidate is not actually unaffiliated, and the candidate's claim of independence was either not made in good faith or is no longer current * * *." Id., at p. 3.
 {¶ 20} In maintaining the instant mandamus action, relators have not disputed the fact that, in issuing their determination in the underlying matter, respondents simply followed the foregoing conclusion in the advisory of the Secretary of State. Stated differently, there is no dispute that the facts of each relator's situation are such that the quoted conclusion is applicable. Despite this, relators still submit that respondents abused their discretion in following the advisory. As was noted above, relators first argue that it was improper to apply the advisory to their respective situations because the Secretary of State did not release the advisory until after they had voted in the May 2007 primary election.
 {¶ 21} As to this particular point, this court would merely restate that the advisory was premised solely on the Sixth Circuit'sMorrison opinion. That opinion was rendered in September 2006, at least seven months before relators decided to vote in the May *Page 10 
2007 primary election even though they had submitted petitions to run as independents in the upcoming general election. To this extent, relators should have been aware that their actions may be subject to any logical extension of the basic Morrison holding; i.e., that a claim of independence must be made in good faith before any nominating petition could be declared valid. Notwithstanding the timing of the advisory of the Secretary of State, relators cannot logically argue that they have been subjected to an ex post facto alteration of the substantive law pertaining to independent candidates.
 {¶ 22} As part of their basic argument in their mandamus petition, relators made the assertion that respondents had misinterpreted the advisory in disqualifying them as independents. Specifically, they asserted that respondents had improperly based their ruling on one factor, voting in the primary election, when the Secretary of State had stated that multiple factors should be considered. However, in light of the specific language quoted above, it is apparent that the Secretary of State concluded that a finding of affiliation could be made solely upon the fact of voting in the primary election of that year. That is, multiple factors need not be considered when voting in the primary has occurred. Therefore, respondents' reading of the advisory was not flawed.
 {¶ 23} In responding to the motion to dismiss the mandamus claim, relators have refined their argument regarding respondents' application of the advisory. Relators now submit that respondents should not have followed the advisory's recommendation as to the effect of voting at the primary because the logic of the Secretary of State contained an internal inconsistency. According to relators, it was illogical for the Secretary of State to first state that a finding of a lack of independence could not be predicated solely upon the voting history of the candidate, and then state that such a decision could turn *Page 11 
solely upon the fact that the candidate voted in the primary election. Relators contend that voting in the primary should be viewed as just one aspect of their respective voting histories.
 {¶ 24} Given that a candidate's choice to vote in the primary is made after he has filed his nominating petition to run as a independent, it is our opinion that viewing such a choice as part of the candidate's voting history would be the illogical analysis. When an independent candidate decides to vote in the primary election, he has essentially taken a completely new step which nullifies any prior declarations he previously made as to his lack of affiliation with a political party. Just as a candidate can renounce his prior affiliation with a party by declaring in his "independent" petition that he has now severed that association, the act of voting in the primary has the effect of rescinding any earlier declaration of independence. To this extent, the vote in the primary is not just another part of the candidate's voting pattern, but is a line of demarcation which renders all of his prior actions regarding his political status meaningless.
 {¶ 25} As a separate argument, relators maintain that respondents' reliance upon the advisory of the Secretary of State was misplaced because the conclusion concerning the effect of voting in the primary conflicts with settled Ohio case law. Citing State ex rel. Barklow v.Appel (1956), 165 Ohio St. 498, relators contend that the case law mandates that any decision regarding the qualifications of a candidate must be based on the facts as they existed on the date his nominating petition was filed. In light of this, they assert that the act of voting in the primary is irrelevant to the issue before respondents because it took place after the date of the submissions of the petitions for office. *Page 12 
 {¶ 26} As to the cited precedent, this court would observe thatBarklow involved a situation in which a candidate for the office of county surveyor was not licensed to be a surveyor when his petition was filed. Without commenting upon the continuing validity of the basicBarklow holding, we would indicate that the application of that holding to the determination of a candidate's independence would defeat the stated purpose of having an independent candidate submit his petition prior to the primary. As was noted above, R.C. 3513.257 expressly provides that the requirements of the statute were intended to protect the electoral process by, inter alia, encouraging political stability and giving the electorate an understandable ballot. If no event after the submission of an independent petition could be considered in determining a lack of affiliation, the candidate would be allowed to perform all types of actions in support of a political party and still run as an independent in the general election. Such a circumstance would clearly foster political fragmentation and could create confusion when the electorate attempts to vote.
 {¶ 27} By challenging the merits of respondents' determination concerning their political status, relators are basically asserting that it was permissible for them to vote in the May 2007 primary even though they intended to run as independents in the general election. If any "independent" candidate was permitted to act in this manner, it would raise the possibility that the candidate could play a part in deciding who his opponent might be in the general election. Such an occurrence would be in conflict with the basic purpose of a primary election, which is to allow the party faithful to choose the person who will represent them against the opposing party.
 {¶ 28} As a final point, relators argue that the Secretary of State and respondents erred in relying upon the Morrison opinion because, as a federal court, the Sixth Circuit *Page 13 
does not have the authority to render a binding decision as to Ohio statutory law. They further argue that the Morrison case is factually distinguishable from the instant action.
 {¶ 29} First, we would indicate that, although the Morrison decision may not be binding upon us, we find the legal analysis of the Sixth Circuit persuasive regarding the proper application of R.C. 3513.257 and3501.01(I). Second, we hold that, even though the facts ofMorrison involved more than mere voting in the subsequent primary, the Secretary of State was correct in basically concluding that the Sixth Circuit would have reached the same outcome even if the candidate inMorrison had only performed that one specific act. Again, this court would emphasize that, as part of its analysis of other relevant statutory provisions, the Sixth Circuit made two points: (1) when a person has made a declaration, for purposes of voting in a primary, that he desires to be affiliated with a political party, R.C. 3513.19(B) requires that the declaration must be made under penalty of election falsification; and (2) R.C. 3599.11(A) states that the crime of election falsification constitutes a fifth-degree felony. Morrison,467 F.3d at 511. In light of the Sixth Circuit's reference to the ramifications of making a false statement concerning a person's political party affiliation, the Secretary of State properly inferred that, under theMorrison analysis, the act of voting in the primary would be sufficient to establish that the candidate was not truly independent for purposes of running for public office. Thus, not only do we agree with the advisory's characterization of Morrison, but we would reach the identical conclusion as to the effect of voting in a primary even if theMorrison decision had never been issued.
 {¶ 30} Pursuant to the foregoing discussion, this court ultimately concludes that respondents did not abuse its discretion in not considering other facts or factors when *Page 14 
they decided to disqualify relators as independent candidates in the November 2007 general election. That is, for purposes of R.C. 3513.257
and 3501.01(I), respondents could find that the fact that each relator voted in the May 2007 primary was sufficient, in and of itself, to prove that each relator was affiliated with a political party at that time. In other words, the act of voting demonstrated that their prior statements of independence had not been made with the requisite degree of good faith.
 {¶ 31} In relation to decisions of county board of elections, it has been held that a writ of mandamus will lie to compel the reversal of the decision only if it can be shown that the outcome was caused by fraud, corruption, an abuse of discretion, or a disregard for the applicable law. State ex rel. Miller v. Cuyahoga Cty. Bd. of Elections,103 Ohio St.3d 477, at ¶ 14. Upon reviewing the factual allegations in the present matter, we hold that relators will never be able to satisfy this standard. That is, even if relators' factual assertions are interpreted in a manner most favorable to them, they still would not be legally sufficient to show any flaw in respondents' basic decision which would warrant the issuance of the writ. Therefore, since relators will never be able to prove a set of facts under which respondents would have a legal obligation to render a new decision in their favor, the dismissal of the mandamus claim is warranted under Civ.R, 12(B)(6).
 {¶ 32} Consistent with the foregoing, respondents' motion to dismiss is granted. It is the order of this court that relators' entire mandamus claim, as amended, is hereby dismissed.
CYNTHIA WESTCOTT RICE, P.J., MARY JANE TRAPP, J., TIMOTHY P. CANNON, J., concur.
[1] After this action had been pending for three weeks, relators moved to amend their mandamus petition. In now issuing this decision on this matter, this court has based our analysis on the amended petition. *Page 1