[Cite as *State ex rel. Livingston v. Miami Cty. Bd. of Elections*, 196 Ohio App.3d 263, 2011-Ohio-6126.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DIVISION
MIAMI COUNTY

STATE EX REL.
LIVINGSTON ET AL.,

v.

MIAMI COUNTY BOARD OF
ELECTIONS.

:
:
:
:
:
:
:
:
:

Appellate Case No.   2011-CA-12

---

**DECISION AND FINAL JUDGMENT ENTRY**
September____8^th____, 2011

---

Donald J. McTigue, J. Corey Colombo, and Mark A. McGinnis; and Bryan Pacheco, for relators.

Gary A. Nasal, Miami County Prosecuting Attorney, and Mark W. Altier, Chief Civil Assistant Prosecuting Attorney, for respondents.

Per Curiam.

{¶ 1}  This matter is before the court in an original action commenced on petitions for writs of mandamus and prohibition filed by relators, James R. Livingston and Robert M. Harrelson.   The respondent is the Miami County Board of Elections.

{¶ 2}  The election of a candidate for the office of law director for the city of Troy, Ohio, will be submitted to the voters at the general election held on November 8, 2011.   Petitioners Livingston and Harrelson are both residents of the city of Troy and are duly qualified electors of Miami County.   In April 2011, prior to the filing deadline,

both relators filed with the board petitions of candidacy for the office of law director of Troy. The form of the petitions was as prescribed by R.C. 3513.261.

{¶ 3} On June 7, 2011, the board held a public hearing to consider the candidacies of nine persons who had filed petitions in the form prescribed by R.C. 3513.257. Each of those persons, including Livingston and Harrelson, had requested that his name appear on the ballot as a nonparty or "independent" candidate. R.C. 3501.01(I) provides:

{¶ 4} " 'Independent candidate' means any candidate who claims not to be affiliated with a political party, and whose name has been certified on the office-type ballot at a general or special election through the filing of a statement of candidacy and nominating petition, as prescribed in section 3513.257 of the Revised Code."

{¶ 5} The board heard testimony and took other evidence relative to the claims of each of the nine candidates that the candidate is not affiliated with a political party. Following that, the board adjourned its public hearing and retired to consider what it had heard. The board thereafter resumed its public hearing, at which the chairman of the board made the following pronouncement:

{¶ 6} "Thank you for your patience. We are now back on the record. We considered, and it is our duty to consider, the credibility, motive, voting record. We considered the evidence, the documents and we've considered the briefs. Present in our deliberations were the four board members and our counsel, Mr. Nasal and Mr. Altier. We considered it all and so we view it our duty to apply the law and the facts as we understand them to be.

{¶ 7}  "I would also say for the record any recitation of facts or law by me or other board members is not intended to be any kind of finding of fact or conclusion of law, but rather our vote as announced was made in consideration of all the facts, all the evidence, everything in the record and the written material and briefs that were presented.

{¶ 8}  "So with that we're going to now take a vote again on the record.  And, Ms. Calendine, if you'll record the vote in the order in which we – well, let me explain as well our duty here is to make a determination about eligibility to be an independent candidate.  So a yes vote means the petition is accepted.  A no vote is the petition is not accepted."

{¶ 9}  The board voted to accept the petitions of seven of the nine independent candidates, including two who had filed petitions as candidates for the office of law director of Troy.  The board voted to invalidate the petitions filed by relators Livingston and Harrelson.

{¶ 10} Relators filed joint petitions for writs of mandamus and prohibition on June 15, 2011, challenging the board's invalidation of their petitions.  They filed an amended petition on June 21, 2011.  Respondent filed an answer on June 28, 2011.

{¶ 11} "In extraordinary actions challenging the decisions of the Secretary of State and boards of elections, the standard is whether they engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard on applicable legal provisions."  *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, ¶ 11.  Relators make no claim of fraud or corruption.  Consequently,

the dispositive issue is whether the board abused its discretion in invalidating relators' petitions.

{¶ 12} R.C. 3501.38 governs petitions filed by candidates for election. R.C. 3501.39(A) establishes standards for unacceptable petitions. That section provides:

{¶ 13} "The secretary of state or a board of elections shall accept any petition described in section 3501.38 of the Revised Code unless one of the following occurs:

{¶ 14} "(1) A written protest against the petition or candidacy, naming specific objections, is filed, a hearing is held, and a determination is made by the election officials with whom the protest is filed that the petition is invalid, in accordance with any section of the Revised Code providing a protest procedure.

{¶ 15} "(2) A written protest against the petition or candidacy, naming specific objections, is filed, a hearing is held, and a determination is made by the election officials with whom the protest is filed that the petition violates any requirement established by law.

{¶ 16} "(3) The candidate's candidacy or the petition violates the requirements of this chapter, Chapter 3513. of the Revised Code, or any other requirements established by law."

{¶ 17} In *State ex rel. Stefanick v. Marietta Mun. Court*, 21 Ohio St.2d. 102, 104 (1970), the Supreme Court held:

{¶ 18} "A writ of prohibition will be allowed only in the absence of a plain and adequate remedy in the ordinary course of the law and where the action complained of represents either a clear usurpation of judicial power or the assumption of jurisdiction

where none exists.

{¶ 19} "Prohibition is a preventive writ rather than a corrective remedy and is designed to prevent a tribunal from proceeding in a matter which it is not authorized to hear and determine.   It cannot be used to review the regularity of an act already performed."   (Citations omitted.)

{¶ 20} R.C. 3105.39(A) confers jurisdiction on the board to invalidate relators' petitions for any of the causes that section identifies.   Further, the relief relators now seek to require the board to instead accept their petitions is a corrective remedy rather than preventive.   Therefore, prohibition cannot lie.

{¶ 21} R.C. 2731.01 defines mandamus as "a writ, issued in the name of the state to an inferior tribunal, a corporation, board, or person, commanding the performance of an act [that] the law specially enjoins as a duty resulting from an office, trust, or station."   Ordinarily, mandamus is available only against a public officer or agency to require performance of an official act that the officer or agency has a clear legal duty to perform and has failed to perform and when the relator has no adequate legal remedy by way of appeal.   The relator must demonstrate that he or she has a clear legal right to have the requested act performed.   The proximity of an election establishes the lack of an adequate remedy in the ordinary course of law.   *State ex rel. Greene v. Montgomery Cty. Bd. of Elections*, 121 Ohio St.3d 631, 2009-Ohio-1716, ¶ 10.

{¶ 22} The board argues that "[a] mere abuse of discretion does not authorize the use of the writ of mandamus[.] * * * [O]rdinarily relief will only be granted upon a

demonstration of a 'gross abuse of discretion.' " The board relies on *State ex rel. Libbey-Owens Ford Glass Co. v. Indus. Comm.*, 162 Ohio St. 302 (1954). The board relates that higher standard to the presumption that officers and boards "will be presumed to have properly performed their duties and not to have acted illegally but regularly and in a lawful manner." *State ex rel. Boccuzzi v. Cuyahoga Cty. Bd. of Commrs.*, 112 Ohio St.3d 438, 2007-Ohio-323, ¶ 16.

{¶ 23} Frankly, we have difficulty affording the board the presumption of regularity that the "gross abuse of discretion" standard requires. The board made no findings to support its decision to invalidate the relators' petitions. R.C. 3501.09(A)(1) and (2), which apply to written protests, expressly require "a determination by the election officials" before a board of elections may decline to accept petitions. The catch-all provision in R.C. 3501.09(A)(3) expresses no like requirements, but a determination is surely necessary to support a finding that a petition violates the requirements on R.C. Chapter 3501 or 3513 "or any other requirements established by law" before a petition is invalidated for those reasons. The board made none.

{¶ 24} Nevertheless, the parties agree that the board necessarily concluded that relators' claims that they are each an "independent candidate," which is defined by R.C. 3501.01(I) to mean "any candidate who claims not to be affiliated with a political party," is untrue. Further, the board contends that, in so doing, it relied on the Ohio Secretary of State Advisory No. 2007-05, which establishes guidelines for boards of elections passing on that question.

{¶ 25} The secretary of state is the chief election officer of the state of Ohio and

has authority over county board of elections, R.C. 3501.05, including the authority to issue directives to boards. R.C. 3501.05(B), (M). Courts recognize the authority of the secretary of state in election matters and have a duty to defer to the secretary's interpretations of election law if it is subject to two different, but equally reasonable, interpretations. *State ex rel. Herman v. Klopfleisch*, 72 Ohio St.3d 581 (1995). Boards of elections likewise have a duty to defer to the secretary in interpreting and implementing state election law. *Lorenzi v. Mahoning Cty. Bd. of Elections*, Mahoning App. No. 07MA 127, 2007-Ohio-5879.

**{¶ 26}** Secretary of State's Advisory No. 2007-05 interprets and applies the holding of the United States Court of Appeals for the Sixth Circuit in *Morrison v. Colley*, 467 F.3d 503 (6th Cir.2006). In *Morrison*, after filing a petition claiming to be an independent candidate, the candidate voted in a partisan primary election. *Morrison* approved a board's refusal to accept the candidate's petition for that reason. Applying *Morrison*, the secretary advised:

**{¶ 27}** "If an independent candidate votes in a party primary election after filing as an independent, the candidate is not actually unaffiliated, and the candidate's claim of independence was either not made in good faith or is no longer current; and

**{¶ 28}** "If an independent candidate was on a political party's central or executive committee at the time he or she filed as an independent candidate, or becomes such a committee member at any time during his or her independent candidacy, the candidate is not actually unaffiliated, and the candidate's claim of independence was either not made in good faith or is no longer current."

{¶ 29} The secretary's advisory is not confined to those particular facts, however. The secretary advised boards of elections that "as indicated by the *Morrison* court, * * * R.C. 3513.257 requires that an independent candidate actually be unaffiliated, or disaffiliated from any political party; and the required claim of unaffiliation by an independent candidate must be made in good faith." The secretary further advised:

{¶ 30} "Additionally, as indicated by the *Morrison* court, indications of party affiliation such as past voting history, information submitted on required election-related filings, political advertisements, participation as a political party officer or member, or holding a public office for which the office holder was nominated through a political party's primary election and elected on a partisan ticket may serve as evidence, though not necessarily conclusive evidence, of party affiliation to support a protest against an independent candidate's candidacy. For example, voting history, alone, is an insufficient basis on which to disqualify an independent candidate because Ohioans are freely entitled to change or revoke their party affiliation at any time. However, voting history, together with other facts tending to indicate party affiliation, may be sufficient grounds to disqualify an independent."

{¶ 31} The board heard evidence that in past years, both relators had voted in Republican primary elections. Both had also signed petitions in support of Republican candidates, and each had signed such a petition in January 2011, only several months before he filed his petition as an independent candidate. Relator Livingston won office as a Republican candidate for Miami County Prosecuting Attorney for a four-year term in the early 1980's. Livingston was a member of the Miami County Republican

executive committee from that time until February 16, 2011, when he resigned that position. Since filing their petitions as independent candidates in April 2011, neither relator has engaged in any conduct inconsistent with his claim that he is unaffiliated with a political party.

{¶ 32} In *Morrison* and *Lorenzi*, and also in *State ex rel. Wilkerson v. Trumbull County Bd. of Elections*, Trumbull App. No. 2007-T-0081, 2007-Ohio-4762, the boards of elections' determinations to not accept an independent candidate's petitions was based, in part, on conduct inconsistent with his claim that occurred thereafter, when the candidate voted in a partisan primary election. At oral argument, the respondent board conceded that its research revealed no case in which an independent candidate was disqualified solely on the basis of prefiling conduct or activity.

{¶ 33} The election laws should be liberally construed in favor of candidates for public office. *State ex rel. Allen v. Warren Cty. Bd. of Elections*, 115 Ohio St.3d 186, 2007-Ohio-4752, ¶ 20. "[A] candidate can renounce his prior affiliation with a party by declaring in his 'independent' petition that he has now severed that association." *Wilkerson*, 2007-Ohio-4762, ¶ 24. A board of elections may, nevertheless, reject the candidate's petitions pursuant to R.C. 3501.39 on a finding that the candidate's claim to have disaffiliated with a political party was not made in good faith because the candidate is not actually unaffiliated. A lack of good faith is shown by subsequent conduct that is materially inconsistent with the prior claim of unaffiliation. A lack of good faith may also be shown by evidence of prior conduct that portrays a subsequent claim of disaffiliation to be a sham or deceitful.

{¶ 34} Consistent with the liberal construction of the laws in favor of candidates, a finding that the candidate's claim was not made in good faith must be supported by clear and convincing evidence. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction of the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and *unequivocal*." (Emphasis sic.) *Cross v. Ledford* (1954), 161 Ohio St. 469, 477.

{¶ 35} The record supports a finding that both relators may have acted on a calculation that they would have a better chance of winning as independent candidates. However, that fails to rise to the level of clear and convincing evidence that their claims of disaffiliation from the Republican party were not made in good faith because the claim is a sham or deceitful—that is, that either actually remains affiliated with the Republican party. Such proof is necessary to find an impropriety in their claims sufficient to permit the board to invalidate their petitions pursuant to R.C. 3501.39(A) on a finding of a lack of good faith.

{¶ 36} R.C. 3501.39(A) provides that a board of elections "shall accept any petition" absent the findings in paragraphs (1) through (3) of that section. To the extent that it made such findings with respect to the petitions that the relators filed, the board abused its discretion. The board had a clear legal duty to accept their petitions and the relators had a clear legal right to have their petitions accepted by the board. The relators are therefore entitled to the writ they seek.

**{¶ 37}** Respondent, the Miami County Board of Elections, shall promptly meet and accept relators' petitions of candidacy for the office of law director of Troy, and thereafter take all necessary steps to insure that the relators' candidacies for that position are submitted to the voters of the city of Troy at the general election to be held on November 8, 2011.

So ordered.

GRADY, P.J., and FAIN and DONOVAN, JJ., concur.