MERRITT, Circuit Judge,
dissenting.
I do not agree with the result in this case barring Jolivette from running as an Independent for the state legislature or with the majority’s interpretation of Ohio law as set out in the recent case of Livingston v. Miami County Board of Elections, 196 Ohio App.3d 263, 963 N.E.2d 187, decided September 8, 2011, or with the majority’s interpretation of the seminal ballot access case on the First Amendment, Anderson v. Celebrezze, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). The bottom line is that Jolivette clearly wants to leave the Republican Party — his long fight in this case is certainly evidence of that choice, along with his many earlier statements to that effect — because the party now rejects him after many years of public service as a Republican. He has nowhere else to turn except as an independent candidate if he is to continue his public service. What stands in his way is the adverse ruling of the Ohio Secretary of State, a partisan official elected statewide as a Republican, who disagrees with the interpretation given the state’s ballot access statute by the highest state court to decide the issue.
In Livingston, the state court overruled a decision rejecting the independent candidacy of two candidates for local office because they had voted in Republican primary elections, signed petitions in support of Republican candidates a few months before the election, and previously won office as a Republican candidate for local office. And one of them, Livingston, was a member of the local Republican Executive Committee until he resigned just before filing a petition as an independent candidate. In reversing the decision rejecting their independent candidacies, the court said:
Consistent with the liberal construction of the laws in favor of candidates, a finding that the candidate’s claim was not made in good faith must be supported by clear and convincing evidence .... The record supports a finding that both relators may have acted on a calculation that they would have a better chance of winning as independent candidates. However, that fails to rise to the level of clear and convincing evidence that their claims of disaffiliation from the Republican Party were not made in good faith because the claim is a sham or deceitful — that is, that either actually remains affiliated with the Republican Party. Such proof is necessary to find an impropriety in their claims sufficient to permit the board to invalidate their petitions pursuant to R.C. 3501.39(A) on a finding of a lack of good faith.
196 Ohio App.3d at 270-71, 963 N.E.2d at 192-93 (citation omitted). Likewise, in the present case, there is no “clear and convincing” evidence that Jolivette is lying about his choice and no one claims his application is a sham. He has attempted to remove all doubt that he is still a Republican by eliminating former references on a website that he is a Republican and in other ways. He has privately and publicly consistently renounced his membership in *773 the Republican Party. The Livingston case is directly contrary to the Ohio Secretary of State’s view that Jolivette remains affiliated with the Republican Party. Under Ohio law, the Secretary may try to persuade Jolivette to remain with the GOP but he may not indenture him to the party or deprive him of the right to change his partisan views and associations.
That should be the end of this case and make it unnecessary to reach a First Amendment question. But our court’s approval of the rulings below makes it necessary to reach the federal question arising under the First Amendment. Ohio has a number of cases in which the Supreme Court has reversed Ohio’s rejection of ballot access by independent candidates or parties thus allowing incumbents to insulate themselves against challengers. See, e.g., Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). More recently, an Ohio case in the Supreme Court, Anderson v. Celebrezze, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Edüd 547 (1983), reversed a Sixth Circuit case upholding Ohio’s effort to bar an independent candidacy and further entrench and stabilize the two major parties in their dominant positions.
In Anderson, the Court struck down an Ohio effort to require minor parties and independent candidates to file much earlier than the major party candidates. This Ohio policy would prevent the candidacy of individuals and minor parties who become disenchanted during the primary process and decide to quit the party. In this case the candidate was John Anderson, who unsuccessfully sought the Republican nomination for President, but then decided to bolt and to seek the office independently. The Supreme Court’s opinion by Justice John Paul Stevens sets out general First Amendment standards that apply up and down the political hierarchy:
A burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment. It discriminates against those candidates and — of particular importance — against those voters whose political preferences he outside the existing political parties. Clements v. Fashing, [457 U.S. 957, 964-65, 102 S.Ct. 2836, 73 L.Edüd 508 (1982) ] (plurality opinion). By limiting the opportunities of independent-minded voters to associate in the electoral arena to enhance their political effectiveness as a group, such restrictions threaten to reduce diversity and competition in the marketplace of ideas. Historically political figures outside the two major parties have been fertile sources of new ideas and new programs; many of their challenges to the status quo have in time made their way into the political mainstream. Illinois Elections Bd. v. Socialist Workers Party, 440 U.S. [173] at 186 [99 S.Ct. 983, 59 L.Edüd 230 (1979) ]; Sweezy v. Neio Hampshire, 345 [354] U.S. 234, 250-251 [77 S.Ct. 1203, 1 L.Edüd 1311] (1957) (opinion of Warren, C.J.). In short, the primary values protected by the First Amendment — “a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open,” New York Times Co. v. Sullivan, 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Edüd 686 (1964) — are served when election campaigns are not monopolized by the existing political parties.
460 U.S. at 793-94, 103 S.Ct. 1564 (footnote and parallel citations omitted).
I believe the Livingston case standards meet the First Amendment test, but the standards applied by my colleagues do not. The Livingston case standards do not “discriminate[ ] against those candidates and— of particular importance — against those voters whose political preferences lie outside the existing political parties.” Id. But *774 the majority opinion “restrictions threaten to reduce diversity and competition in the marketplace of ideas.” Id. The majority opinion undermines our “profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide open.” The majority opinion once again prefers the corporate or establishment side of the case against the iconoclastic individual on his soap box in Hyde Park. I have no idea what Jolivette might do or propose, but he should be given his shot rather than be indentured to the Republican Party because he used to be a Republican.